**TECHNICAL CHEMICAL COMPANY,**
Petitioner,

v.

**W. T. JACOBS, Respondent.**

No. B–3047.

Supreme Court of Texas.

April 26, 1972.

Rehearing Denied June 7, 1972.

Sewell, Junell & Riggs, Thomas S. Terrell, Barrow, Bland & Rehmet, Vincent W. Rehmet, Houston, for petitioner.

Brown, Kronzer, Abraham, Watkins & Steely, John B. Murphrey and W. James Kronzer, Houston, for respondent.

POPE, Justice.

W. T. Jacobs instituted this suit against Technical Chemical Company and Joe Bain for damages he sustained when a can of freon exploded. The freon had been processed and canned by Technical Chemical and sold to Jacobs by Bain. Jacobs tried the case as one of consumer protection and relied only upon the defendants' failure to warn him about the danger of attaching the can to the wrong side of an automobile air conditioning compressor. The trial court rendered judgment for the defendants on the jury verdict, but the court of civil appeals reversed that judgment and rendered judgment that Jacobs recover damages in the sum of $24,000.00. The intermediate court also rendered judgment in favor of Bain against Technical Chemical by way of indemnity, 472 S.W.2d 191, but

that question is not before us. The issue presented by this case is one of causation.

Jacobs' action is grounded upon strict liability as enunciated in RESTATEMENT (SECOND) OF TORTS § 402A (1965),[1] and the problem arises out of the jury answers to the first three special issues.[2] The jury found that (1) Technical Chemical's failure to warn Jacobs on July 11, 1966, of the danger of connecting the freon can to the high pressure side of the compressor exposed him to an unreasonable risk of harm, and (2) it was reasonably foreseeable by Technical Chemical that users of its product might attempt to charge air conditioners by connecting the freon to the high pressure side of the compressor; but, the jury refused to find that (3) such failure to warn was a producing cause of the injuries and damages sustained by Jacobs. The court of civil appeals ruled that the third special issue was irrelevant in a case in which the only defect asserted was the defendant's failure to warn a user who foreseeably would use the product as Jacobs did. In our opinion, the court of civil appeals erred in that conclusion.

Jacobs was a barber by trade and sustained injuries to his hand which interfered with his work. He gave two distinctly different versions of the facts leading up to the explosion of the freon can. By deposition he testified that he purchased two cans of Johnsen's Freeze from Joe Bain's supply company about noon on July 11, 1966. He said he did not read the label on the can at the time of the purchase. After driving home he ate lunch and then took one of the cans from the seat of his car at about 2:00 P.M. He said he was standing under a shade tree preparing to read the directions when the can exploded "like a stick of dynamite." After several witnesses testified at the time of trial, Jacobs admitted that he was probably wrong about his deposition version of the

1. § 402A. Special Liability of Seller of Product for Physical Harm to User or Consumer
    (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
        (a) the seller is engaged in the business of selling such a product, and
        (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
    (2) The rule stated in Subsection (1) applies although
        (a) the seller has exercised all possible care in the preparation and sale of his product, and
        (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

2. (1) Do you find from a preponderance of the evidence that defendant, Technical Chemical Company's failure to warn the plaintiff, W. T. Jacobs, on July 11, 1966, of the danger of connecting the Freon can to the high side of the compressor, exposed such user to an unreasonable risk of harm?

By the term "unreasonable risk of harm," as used in the above and foregoing Special Issue, is meant that the article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary user who purchases it, with the ordinary knowledge common to the community as to its characteristics.
Answered "We do".
    (2) Do you find from a preponderance of the evidence that on or before July 11, 1966, it was reasonably foreseeable by the defendant, Technical Chemical Company, by and through its principal agents that users of its Johnsen's Freon might attempt to charge air conditioners by connecting the Freon to the high side of a compressor?
Answered "We do".
    (3) Do you find from a preponderance of the evidence that such failure to warn was a producing cause of the injuries and damages, if any, sustained by the plaintiff, W. T. Jacobs, on July 11, 1966? In connection with the foregoing Special Issue you are instructed that the term "producing cause," as used in this Charge, means an efficient, exciting or contributing cause, which, in a natural and continuous sequence, produced injuries or damages complained of, if any.
Answered "We do not."

facts. The evidence introduced at trial showed that Jacobs had already started putting the freon into the air conditioning unit of his car by connecting a hose to the discharge or high pressure side of the compressor and to the can of freon. Mr. Newton Dudley, President of Technical Chemical, testified that by connecting the hose to a valve on the "low" side of the compressor the freon would be sucked out of the can; but, by connecting the hose to a valve on the "high" side of the compressor, pressure would be forced into the small freon can until it burst. Witnesses testified and the markings on the top of the can itself show that the can was actually connected by the hose to the air conditioning unit at the time of the explosion. This is the reason that Jacobs, at trial, conceded that the latter version was the way the accident occurred.

The only basis for Jacobs' suit is that the label on the can gave no warning of danger from connecting the can to the high pressure side. The exploded can was introduced as an exhibit. In blue, readable letters there were some general instructions about the manner of connecting the can to the pressure system, but the only warning was "Do Not Permit Can Temperature to Exceed 125°F."

The court of civil appeals identified the defect in the product as the danger of connecting the can to the high pressure side of the compressor. Because the can was so connected and the explosion resulted, the court held that Jacobs proved causation as a matter of law. Technical Chemical, on the other hand, says that the only defect upon which Jacobs sued and submitted his case to the jury was the defendant's failure to give a warning that the can should not be connected to the high side of the compressor, and that the jury was entitled to conclude from the evidence that such a warning would have made no difference.

In strict liability cases, proof of negligence is excused; but, neither Section 402A, *supra,* nor our former decisions have excused proof that the defect in the product was the cause of the injuries. In Darryl v. Ford Motor Co., 440 S.W.2d 630, 633 (Tex.1969), we stated that "[a] manufacturer who places in commerce a product rendered dangerous to life or limb by reason of some defect is strictly liable in tort to one who sustains injury *because of the defective condition.*" [Emphasis added.] That same year we also stated in Pittsburg Coca-Cola Bottling Works of Pittsburg v. Ponder, 443 S.W.2d 546, 548 (Tex.1969),

> The prime requirement for imposing liability on a seller under the rule of strict liability is proof by the plaintiff that *he was injured because of a defective condition in the product* when it left the hands of the particular seller. [Emphasis added.]

Proof of causation is a necessary element of a strict liability case. Among the more recent cases so holding are Bachner v. Pearson, 479 P.2d 319, 326 (Alaska 1970); Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 900 (1962); Schmidt v. Archer Iron Works, Inc., 44 Ill.2d 401, 256 N.E.2d 6, 7 (1970); Cornette v. Searjeant Metal Products, Inc., 258 N.E.2d 652, 657 (Ind.App.1970); Kerr v. Corning Glass Works, 284 Minn. 115, 169 N.W.2d 587, 588 (1969); Keener v. Dayton Elec. Mfg. Co., 445 S.W.2d 362, 366 (Mo.1969); Kohler v. Ford Motor Co., 187 Neb. 428, 191 N.W.2d 601, 606 (1971); McLaughlin v. Sears, Roebuck & Co., 281 A.2d 587, 588 (N.H.1971); Worrell v. Barnes, 484 P.2d 573, 575–576 (Nev.1971); Brownell v. White Motor Co., 490 P.2d 184, 186 (Ore. 1971); Webb v. Zern, 422 Pa. 424, 220 A. 2d 853, 854 (1966); Ritter v. Narragansett Elec. Co., 283 A.2d 255, 262 (R.I.1971); Holifield v. Setco Ind., Inc., 42 Wis.2d 750, 168 N.W.2d 177, 179 (1969).

The issue now before the court is narrower than that suggested by the cited cases. The product itself was neither defective nor unreasonably dangerous. The danger was the failure to warn consumers

of an improper use of the product. It is defendant's contention that a proper warning would not have avoided Jacobs' wrong installation procedure because he would not have read a label with full and adequate warnings. This precise question has not been previously presented to this court and little has been written on the subject. Dean W. Page Keeton has carefully examined and analyzed the problem of warning and causation, and we find his several articles helpful. Keeton, *Products Liability— Inadequacy of Information*, 48 TEXAS L. REV. 398 (1970); Keeton, *Private Law— Torts, Annual Survey of Texas Law*, 24 Sw.L.J. 3, 12 (1970); Keeton, *Products Liability—Problems Pertaining to Proof of Negligence*, 19 Sw.L.J. 26, 33–34 (1965). Dean Keeton divides defective products into three categories: (1) those which are unreasonably dangerous due to safety legislation prohibiting the sale of the product under the circumstances; (2) those which are unreasonably dangerous since the ordinary man, knowing the risks and dangers involved in the use of the product, would not have marketed the product; (3) those which are unreasonably dangerous since the same ordinary man would not have marketed the product without supplying warnings as to the risks and dangers involved in using the product as well as instructions as to how to avoid those risks and dangers. The first two categories may be said to describe products which are defective per se; their mere presence in the market place is enough to impose liability if the product is the source of the injuries. This result occurs because the product and the defect are inseparable. An example of liability under a product defective per se would be for an injury caused by the use of Thalidamide. When the defect is due to inadequate labeling, however, there is a difference; the defect and the product are separable. In the words of Dean Keeton, when a product is defective due to inadequate labeling, "the aspect of the defendant's conduct that made the sale of the product unreasonably dangerous [i. e., the label] must be found to have contributed to the plaintiff's injury." 48 TEXAS L.REV. at 413. This means that it is incumbent upon the plaintiff to secure a jury finding that the faulty labeling was a cause of the injury. It is this finding that Jacobs failed to secure.

Causation in a failure-to-warn case has been mentioned in two other Texas cases. Charles Pfizer & Co. v. Branch, 365 S.W. 2d 832 (Tex.Civ.App.1963, writ dism'd w. o. j.), is not helpful since it was a venue case over which this court had no jurisdiction. Our re-examination of the briefs and record in the case show that neither point nor argument before this court presented the problem of causation. Muncy v. Magnolia Chemical Co., 437 S.W.2d 15 (Tex.Civ.App.1968, writ ref. n. r. e.), was an appeal from a judgment on an instructed verdict for the manufacturer of an insecticide. Plaintiff had sustained serious injuries when he was sprayed with the product. The court of civil appeals reversed the trial court judgment, holding adequacy of a warning on the container to be a question of fact, even though the defendant manufacturer urged that it was entitled to a judgment as a matter of law by reason of the user's admission that he had not read the label on the product. In our present case, however, it is the user who says that he is entitled to a judgment as a matter of law upon proof of an inadequate label, whether it was read or not. The court of civil appeals in Muncy correctly reversed the judgment and remanded the cause to the trial court for a trial upon the fact issues; but, we do not construe Muncy as holding that the court would have overturned a jury's refusal to find the fact of causation.

Both Branch and Muncy relied upon Spruill v. Boyle-Midway, Inc., 308 F.2d 79 (4th Cir. 1962). In that case a fourteen-month-old infant died after swallowing a small amount of Old English Red Oil Furniture Polish which looked like a soft drink. The mother was absent from the room for a few minutes when the child drank the polish. Because the mother ad-

mitted she had not read the label on the bottle, the defendant manufacturer insisted that the inadequate warning was not the cause in fact of the child's death. A jury had found that it was. The holding was only that the causation issue presented a fact question, and the court in Spruill upheld the jury verdict. In this case, as in Spruill, the jury was permitted to make the fact determination concerning causation. Here, however, the jury refused to find that defendant's failure to warn was a producing cause of Jacobs' injuries and damages.

We recognize the problems of proving causation in such a case as this. If the user of a product dies from its use, testimony whether he did or did not read the label may be impossible. If the label is inadequate, whether he would or would not have read an adequate label may be speculative. On the other hand, proof that the defect was the cause of the injuries should, on logic, be required as it is in other cases.

■ It has been suggested that the law should supply the presumption that an adequate warning would have been read. "Where warning is given, the seller may reasonably assume that it will be read and heeded." Restatement (Second) of Torts § 402A, Comment j (1965). See Note, 50 TEXAS L.REV. 577 (1972). Such a presumption works in favor of the manufacturer when an adequate warning is present. Where there is no warning, as in this case, however, the presumption that the user would have read an adequate warning works in favor of the plaintiff user. In other words, the presumption is that Jacobs would have read an adequate warning. The presumption, may, however, be rebutted if the manufacturer comes forward with contrary evidence that the presumed fact did not exist. Sudduth v. Commonwealth County Mutual Ins. Co., 454 S.W.2d 196 (Tex.1970); Southland Life Ins. Co. v. Greenwade, 138 Tex. 450, 159 S.W.2d 854 (1942); 1 McCORMICK & RAY, TEXAS LAW OF EVIDENCE § 53 (1956). Depending upon the individual facts, this may be ac-

complished by the manufacturer's producing evidence that the user was blind, illiterate, intoxicated at the time of the use, irresponsible or lax in judgment or by some other circumstance tending to show that the improper use was or would have been made regardless of the warning.

■ The jury in this case refused to find that Technical Chemical's failure to warn was a producing cause of Jacobs' injuries, and we are unable to say that Jacobs established as a matter of law that it was a producing cause. As pointed out by Technical Chemical, this record shows that Jacobs first testified to a state of facts which had him in the process of beginning to read the label at the time of the explosion. Later, at trial, he was forced to abandon this entire theory when confronted by eyewitness testimony that proved an entirely different state of facts. There was left in the record Jacobs' own statements that he did not read the label before the explosion. Jacobs at one time testified he had previously installed freon in his car about four dozen times, but later said he had done so a few times. From this unsatisfactory state of Jacobs' testimony and all the circumstances, the jury could have concluded that the warning, whatever it might have contained and however it might have been displayed, would have been disregarded by Jacobs.

The court of civil appeals reversed the take nothing judgment of the trial court and rendered judgment that Jacobs recover as damages the amount found by the jury. The court then made an alternative holding that, in the event it should be held that Jacobs did not prove causation as a matter of law, nevertheless, the jury's refusal to find for Jacobs on the causation issue was against the great weight and preponderance of the evidence. We reverse the judgment of the court of civil appeals which rendered judgment for Jacobs. We remand the cause to the trial court in accord with the alternative holding of the intermediate court.