332 N.E.2d 820 (1975)
NISSEN TRAMPOLINE COMPANY, Appellant (Defendant below),
v.
TERRE HAUTE FIRST NATIONAL BANK, As Guardian of the Estate of Bruno Garzolini, Jr., a Minor, Appellee (Plaintiff below), and Herbert A. Mason, D/B/a Southlake Beach, Appellee (Defendant below).
No. 1-774A105.
Court of Appeals of Indiana, First District.
August 20, 1975.
Rehearing Denied September 22, 1975.
*821 Geoffrey Segar, Ralph A. Cohen, Ice, Miller, Donadio & Ryan, Indianapolis, for appellant.
Hansford C. Mann, William J. Maher, Terre Haute, Robert E. Springer, Sullivan, for appellee.
LYBROOK, Judge.
Defendant-appellant Nissen Trampoline Company appeals from a granting of a new trial following a jury verdict in its favor in a products liability action initiated by plaintiff-appellee Terre Haute First National Bank as guardian of the estate of Bruno Garzolini, Jr., a minor.
The record reveals that defendant Nissen was the manufacturer of a product know as "Aqua Diver", a circular trampoline with a metal frame thirty-six (36) inches in diameter and a bed of approximately sixteen (16) inches in diameter. The bed is attached to the frame by a network of elastic cables. This circular structure is then attached to a larger metal frame which has a platform approximately twenty-two (22) inches above the bed of the trampoline. The platform is accessible by a ladder attached at the rear. The entire structure, Aqua Diver, was designed and marketed by defendant for use as a diving apparatus at a swimming pool and/or lake. According to literature distributed by defendant, Aqua Diver was "twice as much fun as an old-fashioned diving board at half the cost."
Herbert A. Mason d/b/a Southlake Beach, purchased an Aqua Diver from Nissen and installed it upon a wooden platform at the beach. On June 28, 1970, while attempting to use the Aqua Diver for his first time, plaintiff Bruno Garzolini, Jr., a thirteen (13) year old boy, was injured. Although unable to recall all the specifics of the occurrence, Garzolini testified that he intended to jump from the platform of the Aqua Diver onto the bed of the trampoline and thereby catapult himself into the water. However, plaintiff landed with only one foot on the bed of the trampoline. His other foot either missed or slipped off the bed and passed through the open space between the bed and circular frame, becoming entangled in the elastic cables. As a result, plaintiff fell from the structure and became suspended by his left leg which remained ensnarled in the cables. Ultimately, plaintiff's injuries required amputation of the leg above the knee. Evidence at trial established that in tests conducted prior to marketing the Aqua Diver, defendant had determined that it was possible for a user's foot to pass through the elastic cables which connected the bed to the frame. Nevertheless, Nissen marketed the product without accompanying it with any warnings or instructions for use.
*822 Plaintiff initiated this action, naming both Nissen and Mason as co-defendants, maintaining that Nissen was liable under the doctrine of strict liability, and that Mason was liable for negligence in failing to furnish supervision and instruction for use of the Aqua Diver. Trial by jury resulted in verdicts in favor of both defendants. Thereafter, pursuant to plaintiff's motion to correct errors and Ind.Rules of Procedure, Trial Rule 59(E), the trial judge granted a new trial as to Nissen only, thereby prompting this appeal. The trial judge supported his ruling with the following findings:
"1. The evidence is undisputed that defendant, Nissen Corporation, was on the 6th day of June, 1959, and for several years thereafter, the manufacturer and seller of an aquatic diving device called an `Aqua Diver'.
2. The evidence is undisputed that on said date Herbert A. Mason purchased an aqua diver from Nissen Corporation.
3. The evidence is undisputed that no warnings or instructions for use accompanied the aqua diver when delivered later that summer.
4. The evidence is undisputed that the aqua diver purchased by Mason was used each summer at his recreation establishment known as Southlake Beach until June 28, 1970, without significant injury to any user.
5. The evidence is undisputed that the aqua diver was in the same condition on June 28, 1970 as it was when purchased from Nissen.
6. The evidence is undisputed that on June 28, 1970, as the plaintiff, Bruno Garzolini, Jr., used the aqua diver for the first time, his left leg became entangled in the elastic cables, was broken at the knee and later had to be amputated above the knee.
7. The evidence is undisputed that prior to selling the aqua diver, the defendant, Nissen Corporation, had determined by tests that it was possible for a user's foot to slip between the elastic cables of the aqua diver.
8. The greater weight of the evidence, by expert testimony of persons knowledgeable in rebounding equipment, is that supervision and instruction should accompany the use of such equipment by beginners.
From the foregoing findings of fact the Court concludes that the aqua diver, manufactured and sold by the defendant, Nissen Corporation, is a defective product dangerous to the user without warning and instruction; that on the 28th day of June, 1970, the aqua diver sold by Nissen to Herbert A. Mason was used by the plaintiff, Bruno Garzolini, Jr., while in substantially the same condition in which it was sold and as a result the plaintiff is entitled to recover for the injuries sustained by use of the product.
It is therefore ordered that the plaintiff's Motion to Correct Errors be sustained as to plaintiff's claim under the theory of strict liability, the jury's verdict being against the weight of the evidence and a new trial is ordered herein."
Nissen's appeal presents the following issues for review:
(1) Whether the trial court's finding that the Aqua Diver was defective was supported by substantial evidence.
(2) Whether the defective condition of the Aqua Diver caused plaintiff's injuries.

*823 (3) Whether the weight of the evidence established that no instruction and supervision were necessary for use of the Aqua Diver.
(4) Whether the granting of a new trial violated TR. 59(E).
(5) Whether the application of the 13th juror rule was unconstitutional in the case at bar.
(6) Whether the trial court's entry must be modified.
Before addressing Nissen's arguments on the merits, it is necessary that our standard of review be ascertained.
Pursuant to Ind.Rules of Procedure, Trial Rule 59(E), the trial judge granted plaintiff a new trial as to Nissen on the issue of strict liability. The findings of fact accompanying the ruling reveal that the new trial was ordered upon the trial judge's determination that the jury verdict on the issue of strict liability was against the weight of the evidence. In such circumstances, there is a strong presumption in favor of the trial court's action. Bailey v. Kain (1963), 135 Ind. App. 657, 192 N.E.2d 486. This presumption was recently recognized by our Supreme Court in Lake Mortgage Company v. Federal National Mortgage Association (1975), Ind., 321 N.E.2d 556:
"The presumption announced in Bailey v. Kain (1963), 135 Ind. App. 657, 192 N.E.2d 486, as modified by TR. 59(E) (7) and adopted by this Court in Memorial Hospital of South Bend, Inc. v. Scott (1973), Ind., 300 N.E.2d 50 arises only when the trial court, acting as a 13th juror, sets aside a jury verdict as against a preponderance of the evidence and supports such decision with special findings of fact as required by TR. 59(E)(7)."
321 N.E.2d at 559.
TR. 59(E), in pertinent part provides:
"(7) in reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a nonadvisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a nonadvisory jury is clearly erroneous as contrary to or not supported by the evidence,
* * * * * *
"When a new trial is granted because the verdict, findings or judgment do not accord with the evidence, the court shall make special findings of fact upon each material issue or element of the claim or defense upon which a new trial is granted. Such finding shall indicate whether the decision is against the weight of the evidence or whether it is clearly erroneous as contrary to or not supported by the evidence; if the decision is found to be against the weight of the evidence, the finding shall relate the supporting and opposing evidence to each issue upon which a new trial is granted; ..."
In Memorial Hospital of South Bend, Inc. v. Scott (1973), Ind., 300 N.E.2d 50, our Supreme Court discussed at length the respective duties of the trial and appellate courts in implementing TR. 59(E)(7):
"On consideration of the granting of a new trial, the trial judge has an affirmative duty to weigh conflicting evidence. Novak, Admx. v. Chi. & Calumet Dist. Transit Co. (1956), 235 Ind. 489, 135 N.E.2d 1. The trial judge sits as a `thirteenth juror' and must determine whether in the minds of reasonable men a contrary verdict should have been reached. State Farm Life Ins. Co. v. Spidel (1964), 246 Ind. 458, 202 N.E.2d 886. An appellate court cannot assume the responsibility of weighing conflicting evidence in reviewing the trial judge's action on a motion for a new trial (here a motion to correct error). State v. Bowling *824 (1970), 253 Ind. 634, 256 N.E.2d 392. The sole duty of an appellate court is to examine the record to see if:
(a) The trial court abused its judicial discretion;
(b) A flagrant injustice has been done the appellant; or
(c) A very strong case for relief from the trial court's ordering a new trial has been made by the appellant. Bailey v. Kain, supra. We are committed to the logic expressed nearly one hundred years ago in the landmark case of Christy v. Holmes (1877), 57 Ind. 314, which logic still stands inescapable today:
"`It should always be kept in mind, that the rule which governs a circuit court in deciding a motion for a new trial, upon the ground that the verdict is not sustained by sufficient evidence, is very different from the rule which governs the Supreme Court in deciding the same question, when brought before it by appeal. The circuit court presides over the case, knows with what ability or animus it is prosecuted or defended, has the jury and their conduct before it, sees the witnesses, their looks and manners, hears their statements, and knows whether willingly or reluctantly made; in short, sees the actual trial from its beginning and throughout its progress to the end, with all the indices (indicia) of truth and falsehood before it, from all of which it may judge the question and decide.
"`An appellate court, (tribunal) which is merely a court of error, has nothing of the case before it except the record, in which the words of one witness mean just the same as the same words of another witness; when, perhaps, if the witnesses were seen while they testified, their manner noted, their living voices heard, their intelligence or ignorance of the subject about which they were testifying perceived, one might be entitled to full credit, and the other to not the least. And the living jurors, which come to us merely as so many names, are all before the circuit court, their intelligence or ignorance of the subject they are trying, their conduct or fairness as to the prejudice or independence, and many signs of truth and falsehood which can not possibly be put into a record; and when the question has passed the ordeal of all these tests in the circuit court, and a new trial has been denied, the decision comes before us with so many presumptions in its favor that it is almost impossible to obtain a reversal of the judgment under the judicial rule by which we are bound. If, then, there is any evidence to support the verdict, we can not reverse the judgment, because we must suppose it was that evidence which convinced the jury and the court, and the evidence which contradicted it was not credible, and therefore disregarded.
"`It sometimes appears to us that the circuit court ought to have granted a new trial, when we can not judicially reverse the case; and sometimes we fear that the circuit court follows the rule which governs the Supreme Court, instead of the rule which should govern the circuit court.
"`In the circuit court, it must clearly appear that substantial justice has been done by the verdict, or a new trial should be granted; in the Supreme Court, it must clearly appear that substantial justice has not been done, or the judgment should be affirmed. If each court will constantly remember the rule of law which governs it, and always put it into practical effect, then substantial justice will be done in every case.'"

I.
Initially, Nissen argues that the trial court's conclusion that the Aqua Diver was a defective product was not supported by substantial evidence. Nissen maintains that there was no evidence which established *825 a defect in design or manufacture, and that the greater weight of expert testimony supports the conclusion that supervision and instruction is not necessary for beginners' use of the Aqua Diver. Nissen therefore urges that finding No. 8, supra, was contrary to the evidence and that the conclusion of defectiveness of the Aqua Diver, if based solely thereon, is error.
Our analysis of the evidence reveals that, as Nissen maintains, no defect in design or manufacture has been shown. However, we do not agree that the conclusion of defectiveness is based solely upon the trial court's finding Number 8, which as Nissen points out, is the subject of conflicting evidence. Rather, for reasons hereinafter stated, it is our opinion that the trial court's conclusion of defectiveness has an undisputed evidential foundation, and is predicated upon Nissen's failure to warn of the known dangers in the use of the Aqua Diver.
Under the doctrine of strict tort liability as expressed in Restatement (2d) Torts, § 402A, and adopted in Indiana, Ayr-Way Stores, Inc. v. Chitwood (1973), Ind., 300 N.E.2d 335; Perfection Paint v. Konduris (1970), 147 Ind. App. 106, 258 N.E.2d 681; Cornette v. Searjeant Metal Products, Inc. (1970), 147 Ind. App. 46, 258 N.E.2d 652; it is well established that a product, although virtually faultless in design, material, and workmanship, may nevertheless be deemed defective so as to impose liability upon the manufacturer for physical harm resulting from its use, where the manufacturer fails to discharge a duty to warn or instruct with respect to potential dangers in the use of the product. See generally, 53 A.L.R.3d 239; Filler v. Rayex Corp. (7th Cir.1970), 435 F.2d 336 (applying Indiana law); Sills v. Massey-Ferguson, Inc. (N.D.Ind. 1969), 296 F. Supp. 776. Generally, the duty to warn arises where the supplier knows or should have known of the danger involved in the use of its product, or where it is unreasonably dangerous to place the product in the hands of a user without a suitable warning. However, where the danger or potentiality of danger is known or should be known to the user, the duty does not attach. Posey v. Clark Equipment Co. (7th Cir.1969), 409 F.2d 560, cert. denied, 396 U.S. 940, 90 S.Ct. 374, 24 L.Ed.2d 242; Garrett v. Nissen Corp. (1972), 84 N.M. 16, 498 P.2d 1359.
In the case at bar, the trial court's findings, which are supported by uncontradicted evidence, reveal that prior to marketing the Aqua Diver, Nissen had discovered through testing that it was possible for a user's foot to pass between the elastic cables connecting the bed of the trampoline to the circular frame and thereby cause injury. Additionally, the undisputed evidence reveals that notwithstanding the knowledge of this danger involved in the use of Aqua Diver, Nissen marketed the product without a warning. This undisputed evidence, as summarized in findings nos. 3 and 7, supra, is substantial evidence to support the trial court's conclusion that the Aqua Diver was a defective product dangerous to the user without a warning within the purview of § 402A. We therefore conclude that there were sufficient special findings to establish that Aqua Diver was defective. In reaching this conclusion we feel compelled to comment upon the bulk of Nissen's argument. A major portion of the argument section of Nissen's brief is directed toward the conflicting evidence on the question of whether supervision and instruction was necessary for beginners' use of Aqua Diver. Nissen's argument is that the issue of supervision and instruction was the basis of the trial court's finding of defectiveness and that the greater weight of the evidence supports the conclusion that it was not necessary. While it cannot be doubted that in certain circumstances a product may be deemed defective where the manufacturer fails to instruct or supervise as to its proper use, such a determination is not necessary in the case at bar. As previously indicated, the record is replete with uncontradicted *826 evidence supporting the conclusion that Aqua Diver was defective under § 402A because no warning about the known dangers in its use were given. Nevertheless, Nissen's brief does not address or attack such findings, but rather is directed solely to the question of the necessity of supervision and instruction. However, notwithstanding the question of supervision and instruction, a sound basis exists for the finding of defectiveness.

II.
Nissen's second argument addresses the issue of causation. It argues that the record is without conflict that a lack of supervision and instruction, if required, was not the cause of plaintiff's injury.
Clearly, under the doctrine of strict liability, an essential element of proof is that the defective condition of the product caused plaintiff's harm. Ayr-Way Stores, Inc., supra. However, we find that Nissen's argument under this heading fails to present a reviewable issue. Since the defective condition of Aqua Diver as above resolved was the failure to warn, the question of whether lack of instruction caused plaintiff's harm is irrelevant. The appropriate question, which Nissen has neither briefed nor argued, is whether the failure to warn caused the harm. Accordingly, we find no reversible error demonstrated under this issue. Nevertheless, we feel it necessary to comment upon the question of causation as affected by failure to warn in the event of future litigation in this cause.
The issue of causation in both negligence and strict liability cases wherein the defect is in design or manufacture differs fundamentally from causation in failure to warn cases. In the former, it is generally required that the plaintiff establish a causal connection in fact by proof that the harm resulted from the condition or ingredient that made the product defective. In the latter case, however, the difference arises in that the factor rendering the product defective is separable from the product itself. Applying the causation in fact test to the failure to warn case would give rise to a doctrine that liability is predicated upon a showing by the plaintiff that he would have suffered no injury but for the absence of warning. Stated differently, the plaintiff would be required to show that he would have heeded a warning had one been given. In our opinion, such an approach would undermine the purpose behind the doctrine of strict tort liability since any such testimony would generally be speculative at best. A more reasonable approach which represents a compromise within the framework of strict liability as suggested in Technical Chemical Co. v. Jacobs (Supreme Court of Texas 1972), 480 S.W.2d 602, and discussed at 53 A.L.R.3d 239 and 50 Texas L.Rev. 577 (1972); is that the law should supply the presumption that an adequate warning would have been read and heeded, thereby minimizing the obvious problems of proof of causation. We find such an approach to be meritorious, workable, and desirable.
Comment j of Restatement (2d) Torts, § 402A (1965), provides a presumption protecting the manufacturer where a warning is given:
"Where warning is given, the seller may reasonably assume that it will be read and heeded; ..."
However, where there is no warning, as in the case at bar, the presumption of comment j that the user would have read and heeded an adequate warning works in favor of the plaintiff user. In other words, the presumption of causation herein is that Garzolini would have read an adequate warning concerning the danger of a user's foot slipping between the elastic cables of Aqua Diver and heeded it, resulting in his not using the Aqua Diver. This presumption may, however, be rebutted by the manufacturer Nissen with contrary evidence *827 that the presumed fact did not exist. As the Texas Supreme Court said in Technical Chemical Co. v. Jacobs, supra:
"Depending upon the individual facts, this may be accomplished by the manufacturer's producing evidence that the user was blind, illiterate, intoxicated at the time of use, irresponsible or lax in judgment or by some other circumstance tending to show that the improper use was or would have been made regardless of the warning."
480 S.W.2d at 606.
Placing the burden of rebutting the presumption of causation on the manufacturer in failure to warn cases is not inconsistent with the policies behind strict liability.[1] It would encourage manufacturers to provide safe products and to warn of the known dangers in the use of the product which might cause injury. Such a presumption would also discourage those manufacturers who would rather risk liability than provide a warning which would impair the marketability of the product.[2] The presumption of causation in failure to warn cases is not to be taken as an abrogation of the issue of causation, thereby subjecting a manufacturer to liability for almost any injury caused by his product. Rather, it merely shifts to the manufacturer the burden of proof where the fact-finder could only speculate as to whether the injury could have been prevented by a warning.

III.
Nissen's third argument is that the court erred in finding that the greater weight of the evidence was that supervision and instruction was necessary for beginners' use of Aqua Diver. Nissen argues that this finding is "not supported by the actual evidence and cannot form the basis for a 13th juror reversal of the jury's verdict."
Since we have determined that the failure to warn was a sufficient basis for the trial court's action, we need not determine whether the greater weight of the evidence supported or opposed the trial court's finding concerning supervision and instruction. In light of our analysis herein, such a finding is mere suplusage and even if not supported by the evidence, would not justify a reversal of the trial court. No error exists for Nissen under this issue.

IV.
Fourthly, Nissen argues that in awarding a new trial the trial judge violated TR. 59(E) in failing to set out opposing and supporting evidence on the issue of supervision and instruction. Again, Nissen's argument is predicated upon the erroneous assumption that the issue of supervision and instruction was the single issue upon which the new trial was granted. Nissen's argument overlooks the failure to warn issue discussed previously. Finding number eight of the trial judge which Nissen attacks hereunder is surplusage and not an essential element in an action for failure to warn. While it cannot be disputed that the finding does not comply with the specifics of TR. 59(E)(7), such noncompliance is neither prejudicial to Nissen nor reversible error.

V.
Fifthly, Nissen argues that application of the 13th juror rule in the case at bar was unconstitutional in that it deprived Nissen of right to trial by jury as guaranteed by Article I, § 20 of the Indiana Constitution. We do not agree.
Nissen's argument does not attack TR. 59(E)(7) as being unconstitutional on its face, but rather recognizes that application of "the rule in a case where the evidence is clearly against the jury's verdict is a permissible and desirable function". Nissen's *828 argument is that where the evidence is without conflict and where the jury's verdict is reasonable and supported by substantial evidence, setting aside the verdict as being against the weight of the evidence is unconstitutional.
From our above analysis, it is not necessary that we address the question of constitutionality of TR. 59(E)(7) in the context of Nissen's argument. The evidence which is without conflict overwhelmingly supports the conclusion that Aqua Diver was defective in the purview of § 402A. The contrary jury verdict was not reasonable or supported by substantial evidence. The trial judge herein exercised his historic duty to insure that the jury system remain a rational process. In granting a new trial on the issue of strict liability, the trial judge's power under TR. 59(E)(7) was not exercised in derogation of the right to trial by jury as Nissen suggests. Rather, by so ruling, the trial judge served as a "safeguard of that right by warranting that the jury system does not become a whimsical tool without restraint." Memorial Hospital of South Bend, Inc. v. Scott, supra.

VI.
Finally, Nissen maintains that if the granting of a new trial was proper, it is necessary that this court modify the trial court's entry and that the issues upon retrial be limited.
Nissen argues that the statement "... as a result the plaintiff is entitled to recover for the injuries sustained by use of the product" which appears in the conclusion of the trial court's entry granting a new trial must be stricken. Nissen maintains that this entry is an attempt by the trial court to direct a verdict for the plaintiff and as such is improper.
Our analysis reveals that this statement was intended by the trial court to be a finding upon the issue of causation, which as previously discussed is an essential element of strict liability. It does not purport to be an entry directing a verdict in favor of plaintiff since the new trial was granted on the issue of liability in lieu of damages only. Further, since this entry represents the only finding on causation it is not surplusage as Nissen also argues, but rather is an integral part of the order granting new trial.
Nissen also argues that the issues to be resolved upon retrial should be limited to liability under § 402A and that any issue under § 402B of the Restatement 2d Torts[3] has been resolved adverse to plaintiff. We agree. Plaintiff raised this issue at trial, the jury found against him, plaintiff raised it in his motion to correct errors, but the court did not find for plaintiff upon this issue in its entry granting a new trial. Plaintiff having failed to file a motion to correct errors or to perfect an appeal directed toward that ruling is not entitled to have that issue litigated upon retrial. The only issue to be resolved in future litigation is whether Nissen is liable under § 402A.
There being no reversible error demonstrated by Nissen, the judgment below granting a new trial on the issue of strict liability is affirmed.
Judgment affirmed.
ROBERTSON, C.J., and HOFFMAN, J. (participating by designation), concur.
NOTES
[1] See, Comment c of § 402A.
[2] See, Note, 50 Texas L.Rev. 577 (1972).
[3] § 402B deals with misrepresentation by a seller of chattels to a consumer.