257 N.J. Super. 279 (1992)
608 A.2d 416
GEORGE COFFMAN, PLAINTIFF-RESPONDENT, AND ELIZABETH COFFMAN, HIS WIFE, PLAINTIFF,
v.
KEENE CORPORATION, DEFENDANT-APPELLANT, AND PITTSBURGH CORNING CORP., IN ITSELF, AND AS SUCCESSOR TO UNARCO; KEENE CORP., AS SUCCESSOR TO BALDWIN-EHRETHILL, INC.; H.K. PORTER CO.; RAYMARK INDUSTRIES, INC., SUCCESSOR TO RAYBESTOS-MANHATTAN, INC.; OWENS-ILLINOIS, INC.; OWENS CORNING FIBERGLAS CORP.; GARLOCK, INC.; FIBREBOARD CORP.; CELOTEX CORPORATION, IN ITSELF, AND AS SUCCESSOR TO PHILIP CAREY MANUFACTURING CO.; GAF CORPORATION, IN ITSELF, AND AS SUCCESSOR TO SOUTHERN ASBESTOS CO.; EAGLE-PICHER INDUSTRIES, INC.; FLEXITALLIC GASKET CO.; NICOLET, INC., IN ITSELF, AND AS SUCCESSOR TO KEASBEY AND MATTISON CO.; ARMSTRONG WORLD INDUSTRIES, INC.; ROCK WOOL MANUFACTURING CO.; FLINTKOTE CO.; J.W. ROBERTS, LTD., A DIVISION OF TURNER & NEWALL, LTD.; ACANDS, INC.; AMCHEM PRODUCTS, INC., BENJAMIN FOSTER DIV.; AND JOHN DOE CORPORATIONS (1-20), DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 28, 1992.
Decided June 18, 1992.
*281 Before Judges O'BRIEN, HAVEY and CONLEY.
Theresa Keeley argued the cause for appellant (McCarter & English, attorneys; Michael A. Tanenbaum, of counsel; John C. Garde and Teresa L. Moore, on the brief).
Patrice A. Gillotti argued the cause for respondent (Tomar, Simonoff, Adourian & O'Brien, attorneys; Patrice A. Gillotti and Joshua M. Spielberg, on the brief).
The opinion of the court was delivered by CONLEY, J.S.C. (temporarily assigned).
Defendant Keene Corporation's[1] appeal from an adverse verdict in this asbestos personal injury litigation requires us to address the issue of whether a plaintiff in a failure to warn products liability case may rely upon what has frequently been referred to as the "heeding presumption" in proving proximate cause. Although other states have adopted such a presumption in failure to warn cases, we have not yet addressed the issue. *282 We now hold that plaintiffs in failure to warn asbestos products liability litigation may avail themselves of the presumption.
In 1951 when he was 27 years old, plaintiff George Coffman began his employment as an electrician at the naval shipyard in Philadelphia. In that capacity, plaintiff worked in cramped, confined, interiors of the various ships, carriers, or submarines that were being serviced, overhauled or constructed at the shipyard. Renovation or overhaul of a vessel entailed the removal of old, and the subsequent installation of new, asbestos insulation on pipes, boilers, and other surfaces throughout a vessel. Consequently, during a renovation or overhaul, asbestos dust and fibers were everywhere; they permeated the closed, shipboard environment as old insulation was ripped out and new insulation was installed. There was very little ventilation on board the ships during such overhauls because usually the ship's ventilation system was removed at the beginning of the work.
Plaintiff worked in the asbestos-laden environment of numerous naval vessels for varying amounts of time from April 1951 through July 1969, when he retired from the shipyard. During this period Keene was a chief supplier of asbestos insulating products installed on ships at the shipyard. There were no health warnings on any of the asbestos products Keene supplied.
Following his retirement from the shipyard in 1969, plaintiff began working at the Defense Industrial Supply Center in Philadelphia. During that employment, he had very little exposure to asbestos products. However, plaintiff did develop Paget's disease  a degenerative bone condition  while so employed and, because of that disease, he retired from federal service on a disability pension in 1976. From 1979 through 1988, plaintiff held a series of five jobs but was not exposed to asbestos dust or fibers while employed at any of those work places. In 1988, he retired from all employment.
*283 In the summer of 1985 plaintiff sought medical treatment for another ailment and became aware of his asbestos-related medical problem at that time. He was referred to a radiologist who x-rayed his chest. The x-rays, he was told, showed he had an asbestos-related disease. A pulmonary specialist, Dr. William Morowitz, determined he had extensive scarring on both lungs and asbestos fibers in his lungs. Dr. Morowitz diagnosed asbestosis and informed plaintiff an annual medical monitoring was necessary to detect any developing lung cancer.
When plaintiff learned he had asbestosis, he was shocked, angry, and frightened. He recalled he had watched as a brother-in-law wasted away and died from asbestos-induced cancer at an earlier time. As a result, he testified at trial that he lived in "... constant worry, constant fear" that a similar fate awaited him.
During trial Keene requested the jurors be charged "... they must specifically find that the lack of a warning was the proximate cause of the injury...." As part of this request, the judge was also asked to tell the jury "they must find that the plaintiff would [not] have followed a warning had a warning been there." He rejected both requests. As to the latter, he said "[t]he law is to the contrary. It is presumed that [if] there was one [a warning] that he would follow [it]." As to proximate cause, then, the trial judge instructed the jury plaintiff had to prove he incurred an asbestos-related injury which was proximately caused by the asbestos products. Specifically, the judge explained "[b]y proximate cause is meant that the defendants' product was an efficient cause of the plaintiff's injury, that is, it was a substantial or significant factor in bringing about the injury." He thus gave a medical causation charge but did not give a defective product causation charge.
The jury returned a verdict finding plaintiff had an asbestos-related injury, that seven of the nine named defendants (including Keene and Owens) had substantially contributed to that injury, and that Keene and Owens were 15% and 20% responsible, *284 respectively, for that injury. The jury awarded plaintiff $300,000 in damages for pain and suffering. The jury also found that plaintiff had a reasonable fear of cancer brought on by his exposure to defendants' asbestos. To compensate him for this emotional distress, the jury awarded him $100,000. Finally, the jury determined that Coffman had proven his need for future medical surveillance and awarded him $6,000 to meet that ongoing future expense.
On appeal, Keene argues the failure to instruct the jury plaintiff must prove, not only that the exposure to defendants' product was a proximate cause of medical injuries, but also that the absence of a warning on the product was a proximate cause of harm, was reversible error. Additionally it contends there was insufficient evidence to support the jury verdict of 15% responsibility for plaintiff's injuries and that the amount of damages for pain and suffering and fear of cancer was excessive. Finally it challenges an award of prejudgment interest.[2]

I.
It is not disputed that in order to establish strict liability a plaintiff must prove, in addition to a defect in the product, the element of proximate causation. In fact, in asbestos failure to warn cases, there are two separate components to a plaintiff's causation burden of proof. The asbestos-related injuries must be shown to have been proximately caused by exposure to a defendant's product ("medical causation"). Sholtis v. American Cyanamid Co., 238 N.J. Super. 8, 30-31, 568 A.2d 1196 (App.Div. 1989). In addition, and pertinent to this appeal, plaintiff must prove the defect in the product was a proximate cause of harm. Campos v. Firestone Tire & Rubber Co., 98 N.J. 198, *285 209, 485 A.2d 305 (1984).[3]
Here, the alleged defect is not the asbestos product itself, exposure to which medically caused injuries, but the failure to provide warnings. As a result, plaintiff was required to prove as an element of proximate causation, that the absence of a warning was a proximate cause of harm. Campos v. Firestone Tire & Rubber Co., 98 N.J. at 209, 485 A.2d 305; Michalko v. Cooke Color & Chem. Corp., 91 N.J. 386, 402, 451 A.2d 179 (1982). See also Whitehead v. St. Joe Lead Co., Inc., 729 F.2d 238, 248-49, 255 (3rd Cir.1984).
In a failure to warn case, establishing that the absence of a warning was a substantial factor in the harm alleged to have resulted from exposure to the product itself is particularly difficult. If the plaintiff dies from exposure to the product or its use, evidence of whether a label was or was not read or would or would not have been read may be impossible. Moreover, whether a warning, had one been provided, would or would not have been followed may be speculative, involving consideration not only of the particular individual involved but also the nature of his or her employment and whether he or she would have had some alternative choice. In response to these considerations in failure to warn cases:
It has been suggested that the law should supply the presumption that an adequate warning would have been read. "Where warning is given, the seller may reasonably assume that it will be read and heeded." Restatement (Second) of Torts § 402A, Comment j (1965). See Note, 50 Texas L.Rev. 577 (1972). Such a presumption works in favor of the manufacturer when an adequate warning is present. Where there is no warning, as in this case, however, the presumption that the user would have read an adequate warning works in favor of the plaintiff user. In other words, the presumption is that [the plaintiff] would have read an adequate warning. The presumption, may, however, be rebutted if the manufacturer comes forward with contrary evidence that the *286 presumed fact did not exist. Sudduth v. Commonwealth County Mutual Ins. Co., 454 S.W.2d 196 (Tex. 1970); Southland Life Ins. Co. v. Greenwade, 138 Tex. 450, 159 S.W.2d 854 (1942); 1 McCormick & Ray, Texas Law of Evidence § 53 (1956). Depending upon the individual facts, this may be accomplished by the manufacturer's producing evidence that the user was blind, illiterate, intoxicated at the time of the use, irresponsible or lax in judgment or by some other circumstance tending to show that the improper use was or would have been made regardless of the warning.
[Technical Chem. Co. v. Jacobs, 480 S.W.2d 602, 606 (Tex. 1972)].
Similarly, the Indiana Court of Appeals has observed:
The issue of causation in both negligence and strict liability cases wherein the defect is in design or manufacture differs fundamentally from causation in failure to warn cases. In the former, it is generally required that the plaintiff establish a causal connection in fact by proof that the harm resulted from the condition or ingredient that made the product defective. In the latter case, however, the difference arises in that the factor rendering the product defective is separable from the product itself. Applying the causation in fact test to the failure to warn case would give rise to a doctrine that liability is predicated upon a showing by the plaintiff that he would have suffered no injury but for the absence of warning. Stated differently, the plaintiff would be required to show that he would have heeded a warning had one been given. In our opinion, such an approach would undermine the purpose behind the doctrine of strict tort liability since any such testimony would generally be speculative at best. A more reasonable approach which represents a compromise within the framework of strict liability as suggested in Technical Chemical Co. v. Jacobs (Supreme Court of Texas 1972), 480 S.W.2d 602, and discussed at 53 A.L.R.3d 239 and 50 Texas L.Rev. 577 (1972); is that the law should supply the presumption that an adequate warning would have been read and heeded, thereby minimizing the obvious problems of proof of causation. We find such an approach to be meritorious, workable, and desirable.
* * * * * * * *
Placing the burden of rebutting the presumption of causation on the manufacturer in failure to warn cases is not inconsistent with the policies behind strict liability. It would encourage manufacturers to provide safe products and to warn of the known dangers in the use of the product which might cause injury. Such a presumption would also discourage those manufacturers who would rather risk liability than provide a warning which would impair the marketability of the product. The presumption of causation in failure to warn cases is not to be taken as an abrogation of the issue of causation, thereby subjecting a manufacturer to liability for almost any injury caused by his product. Rather, it merely shifts to the manufacturer the burden of proof where the fact-finder could only speculate as to whether the injury could have been prevented by a warning.
[Nissen Trampoline Co. v. Terre Haute First Nat'l Bank, 332 N.E.2d 820, 826-27 (Ind. Ct. App. 1975), rev'd on procedural grounds, 265 Ind. 457, 358 N.E.2d 974 (1976)].
*287 This presumption is premised upon Section 402A, Restatement (Second) of Torts (1965), Comment j. That Comment provides in part:
Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.
We recognize Comment j benefits the seller or manufacturer where an adequate warning has been provided. However a logical corollary of Comment j is that the buyer or user should benefit where a warning is not given. Thus, if the seller or manufacturer is entitled to a presumption that an adequate warning will be read and heeded, a plaintiff should be entitled to the same presumption when no warning is given. See Reyes v. Wyeth Laboratories, 498 F.2d 1264, 1281 (5th Cir.), cert. denied, 419 U.S. 1096, 95 S.Ct. 687, 42 L.Ed.2d 688 (1974); Nissen Trampoline Co. v. Terre Haute First Nat'l Bank, 332 N.E.2d at 826; Butz v. Werner, 438 N.W.2d 509, 516 (N.D. 1989); Seley v. G.D. Searle & Co., 67 Ohio St.2d 192, 423 N.E.2d 831, 838 (1981); Technical Chem. Co. v. Jacobs, 480 S.W.2d at 606. As observed in Wolfe v. Ford Motor Co., 6 Mass. App. Ct. 346, 376 N.E.2d 143, 147 (1978):
An adequate warning is by definition one that would in the ordinary course have come to the user's attention. The failure to give such a warning therefore permits the inference that it would have alerted the user to the danger and forestalled the accident.
Comment j has repeatedly been construed to provide a rebuttable presumption in failure to warn cases assisting plaintiffs in establishing proximate cause as to the defect. See e.g., Reyes v. Wyeth Laboratories, 498 F.2d at 1281 (applying Texas law); Dias v. Daisy-Heddon, 180 Ind. App. 657, 390 N.E.2d 222, 225 (1979); Ortho Pharmaceutical Corp. v. Chapman, 180 Ind. App. 33, 388 N.E.2d 541, 555 (1979); Nissen Trampoline Co. v. Terre Haute First Nat'l Bank, 332 N.E.2d at 826-827; Wooderson v. Ortho Pharmaceutical Corp., 235 Kan. 387, 681 P.2d 1038, 1057, cert. denied, 469 U.S. 965, 105 S.Ct. 365, 83 L.Ed.2d 301 (1984); Bloxom v. Bloxom, 512 So.2d 839, 850 (La. 1987); Wolfe v. Ford Motor Co., 376 N.E.2d at 147; *288 Eagle-Picher Industries, Inc. v. Balbos, 326 Md. 179, 604 A.2d 445, 468-69 (1992); Grady v. American Optical Corp., 702 S.W.2d 911, 918 (Mo. App. 1985); Seley v. G.D. Searle & Co., 423 N.E.2d at 838; Magro v. Ragsdale Bros., Inc., 721 S.W.2d 832, 834 (Tex. 1986); Technical Chem. Co. v. Jacobs, 480 S.W.2d at 606. See also Payne v. Soft Sheen Products, Inc., 486 A.2d 712, 725 (D.C. 1985); Benoit v. Ryan Chevrolet, 428 So.2d 489, 493 n. 8 (La. Ct. App. 1982); Cunningham v. Charles Pfizer & Co., Inc., 532 P.2d 1377, 1382 (Okla. 1974); Menard v. Newhall, 135 Vt. 53, 373 A.2d 505, 506 (1977). See 3 American Law of Products Liability § 32:74, at 118 (3d ed. 1987); Sales, "The Duty to Warn and Instruct for Safe Use in Strict Tort Liability," 13 St. Mary's L.J. 521, 549 (1982); Twerski, "Seizing the Middle Ground Between Rules and Standards in Design Defect Litigation: Advancing Directed Verdict Practice in the Law of Torts," 57 N.Y.U.L.Rev. 521, 562, n. 149 (1982). Cf. Raney v. Owens-Illinois, Inc., 897 F.2d 94 (2d Cir.1990) (heeding presumption not applicable under New York law but fact that plaintiff would have heeded a warning can be inferred). Contra Potthoff v. Alms, 41 Colo. App. 51, 583 P.2d 309, 311 (1978) ("[w]e have found no case authority construing Comment j to create a special presumption concerning proximate causation. We conclude that, at least as to an obviously dangerous machine ... whether the user of a product would have acted in the same manner had a proper warning been given is normally a question of fact on which a jury, unaided by presumptions and guided only by the evidence before it, is best qualified to speak."). See also Thomas v. Hoffman-LaRoche, Inc., 949 F.2d 806, 812-814, reh'g denied, 957 F.2d 869 (5th Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 2304, 119 L.Ed.2d 226 (1992) (rejecting rebuttable "heeding" presumption under Mississippi law in a failure to warn drug prescription case in the context of an "unavoidable risk" and requiring proof that the risk was sufficiently high that it would have changed the treating physician's decision to prescribe the drug had he been adequately warned).
*289 We think Comment j provides ample support for application of the rebuttable "heeding" presumption in an asbestos failure to warn case to assist a plaintiff in proving the absence of a warning proximately caused harm. Although not directly acknowledging the existence of such a presumption under our law, we think this result was suggested by the Supreme Court in Campos v. Firestone Tire & Rubber Co. when Justice Schreiber said:
Indeed, plaintiff made little, if any, showing that with a proper warning the accident would not have occurred. Although there may be some question whether plaintiff sustained his burden of proving causation .. . we are of the opinion that the matter should be remanded for a new trial. See also Twerski, "Seizing the Middle Ground Between Rules and Standards in Design Defect Litigation: Advancing Directed Verdict Practice in the Law of Torts," 57 N.Y.U.L.Rev. 521, 562 (1982) (noting that in failure to warn products liability cases some courts [footnote omitted] have helped plaintiffs overcome the burden of proof by positing a rebuttable presumption that the warning would have been heeded if given). [98 N.J. at 210-11, 485 A.2d 305].
We recognize in Campos such a presumption was not applied to the particular facts. Indeed, it does not appear plaintiff argued the existence of the presumption. The focus in Campos, rather, was whether plaintiff's alleged subjective knowledge of a danger or warning as a matter of law was not required. Plaintiff there had previously been injured in a similar incident and he thus was arguably already aware of the need to protect himself. There, thus, was a substantial issue as to whether plaintiff would have heeded a warning. Conversely, in Vallillo v. Muskin Corp., 212 N.J. Super. 155, 514 A.2d 528 (App.Div. 1986), certif. denied, 111 N.J. 624, 546 A.2d 540 (1988), we concluded plaintiff's prior knowledge of the dangers associated with diving into a shallow pool, as a matter of law, established that the alleged defect, an inadequate warning, was not a proximate cause of any harm  i.e. even had an adequate warning been given, plaintiff would not have heeded it.
Here it is true plaintiff presented no evidence that had there been a warning he would have taken some action to protect himself. We have held, however, that he was entitled to rely *290 upon the rebuttable presumption that had a warning been present, he would have heeded it. Defendant presented no evidence to the contrary. The most it has argued is that plaintiff's testimony he used no safety devices while he was working at the shipyard, sufficiently rebuts the presumption so as to present an issue for the jury. We find this argument somewhat disingenuous for plaintiff also testified there were no safety devices available. See Magro v. Ragsdale Bros., Inc., 721 S.W.2d at 834 ("laxity in judgment" unrelated to reading or heeding safety information and occurring after exposure to product insufficient to overcome presumption, and causation found as a matter of law).
Where, as here, defendant produces no evidence to overcome the presumption, a trial judge need not submit the issue of proximate cause arising from the absence of a warning to the jury but may determine as a matter of law a warning would have been heeded.[4]See Reyes v. Wyeth Laboratories, 498 F.2d at 1281 ("[w]here a consumer, whose injury the manufacturer should have reasonably foreseen, is injured by a product sold without a required warning, a rebuttable presumption will arise that the consumer would have read any warning provided by the manufacturer, and acted so as to minimize the risks. In the absence of evidence rebutting the presumption, a jury finding that the defendant's product was the producing cause [medical causation] of the plaintiff's injury would be sufficient to hold him liable").

II.
Keene argues plaintiff's "medical causation" evidence was insufficient to support a 15% apportionment against it. We disagree.
*291 Plaintiff testified he worked at the shipyard from April 1951 through July 1969 as an electrician directly engaged in shipbuilding, renovation, maintenance, and overhaul and that as part of his job he daily worked side-by-side in crowded quarters with coemployees from various trades, including asbestos pipe insulators. In the course of that work, asbestos dust and fibers filled the air he breathed. This condition was aggravated by the fact the ventilation system on the vessel being serviced was almost always removed at the beginning of any overhaul or renovation operation.
The role of Keene's products in plaintiff's exposure to asbestos fibers was primarily established through the testimony of George Watts, a retired supervisor of the shipyard's pipe insulating section. Watts established that Keene's predecessor company[5] was a chief supplier of asbestos insulation products to the shipyard during the period plaintiff worked as an electrician. Watts testified that Keene's products were used throughout the shipyard on a daily basis during this period and that electricians such as plaintiff  who necessarily worked in close proximity to pipe insulators  would be exposed to asbestos dust from those products every day. He specifically said that Keene's products and those of its predecessor were used in all the vessels worked on at the yard.
We said in Sholtis v. American Cyanamid Co., 238 N.J. Super. at 30-31, 568 A.2d 1196:
[to] prevail against a particular defendant in an asbestos case, a plaintiff must establish, in addition to other elements of a product liability action, exposure to friable asbestos manufactured or distributed by the defendant. What has principally concerned us here is proof that each plaintiff's exposure to each defendant's asbestos was a proximate cause of plaintiff's disease, i.e., that the exposure was a substantial factor in causing or exacerbating the disease.
To prove an exposure was a substantial factor in causing or exacerbating the disease, we held a plaintiff must prove "an exposure of sufficient frequency, with a regularity of contact, *292 and with the product in close proximity...." Id. at 28, 568 A.2d 1196. This "frequency, regularity and proximity" test, we said:
... appears to us to be well-reasoned, properly focusing upon the cumulative effects of the exposure. It is a fair balance between the needs of plaintiffs (recognizing the difficulty of proving contact) and defendants (protecting against liability predicated on guesswork). Industry should not be saddled with such open-ended exposure based upon "a casual or minimal contact." ... Yet the phraseology should not supply "catch words;" the underlying concept should not be lost. Since proof of direct contact is almost always lacking, especially in bystander cases, courts must rely upon circumstantial proof of sufficiently intense exposure to warrant liability. [Id. at 29, 568 A.2d 1196. (citations omitted)].
Thus, the jury here was instructed: "[i]n determining whether a particular defendant's asbestos product constituted a substantial factor in bringing about plaintiff's injury you must consider whether there has been an exposure of sufficient frequency with regularity of contact and with the product in close proximity rather than casual or minimal contact." We think such an exposure reasonably could have been found by the jury from the testimony of plaintiff and Watts. According to that testimony, plaintiff worked daily over a period of years in cramped shipboard environments permeated with asbestos dust and fibers. The testimony also reveals that Keene was a chief supplier of asbestos insulating products to the shipyard during this period and that these products were used on all the ships worked on. This evidence was more than sufficient to show plaintiff was exposed to Keene's products in the long-term course of his employment and that that exposure was of sufficient frequency, regularity and proximity to have been a substantial factor in causing his asbestos-related injuries to a percentage of 15%.
Thus Keene's motion for judgment notwithstanding the verdict or in the alternative for a new trial was properly denied. Accepting as true all the evidence favoring plaintiff and the inferences therefrom, the jury could reasonably have concluded Keene's asbestos products had medically-proximately caused plaintiff's injuries. R. 4:40-2(b); Dolson v. Anastasia, 55 N.J. *293 2, 5-6, 258 A.2d 706 (1969). The motion for a new trial was properly denied because, in light of the evidence presented at trial, and "having given due regard to the opportunity of the jury to pass upon the credibility of the witnesses," we cannot say there clearly and convincingly was a miscarriage of justice under the law when the jury imposed liability on Keene for 15% of the damages awarded to plaintiff. R. 4:49-1(a); R. 2:10-1; Feldman v. Lederle Laboratories, 97 N.J. 429, 462-463, 479 A.2d 374 (1984).

III.
Keene contends the trial judge erred when he refused to order a new trial on damages or, alternatively, a remittitur. It argues the evidence did not support the quantum of damages awarded by the jury on plaintiff's claims for his pain and suffering and for his fear of cancer.
At trial plaintiff presented medical testimony from two physicians: Drs. Pope and Morowitz. Concerning the pain and suffering claim, Dr. Pope testified plaintiff has "extensive asbestos related pleural disease and he has asbestosis." Dr. Pope opined that his review of an x-ray of plaintiff's lungs revealed "... a classic picture of asbestosis as well as a classic picture of extensive pleural plaqueing and thickening." Additionally, Dr. Morowitz testified that plaintiff had "... bilateral pleural thickening and calcification" from his exposure to asbestos. Dr. Morowitz opined plaintiff had asbestosis and extensive pleural scarring. According to them, plaintiff's conditions were untreatable and progressive.
Concerning his fear of cancer claim, plaintiff testified to his anger and fright when he learned in the summer of 1985 that he had developed asbestosis and explained how his fright is magnified by the experience of his brother-in-law, who had physically wasted and died from cancer brought on by asbestosis. Moreover, plaintiff stated that his physicians had told him that his asbestos disease was both untreatable and progressive, *294 and that he had to be medically monitored in case cancer developed. Keene, on the other hand, presented testimony from Dr. Jack Hyman, who opined that while plaintiff had extensive pleural thickening, scarring, and asbestos-related calcification on his lungs, he had no real pulmonary impairment and did not suffer from asbestosis.
In denying Keene's motion for a new trial on damages or remittitur, the judge concluded that Keene's medical witness  Dr. Hyman  was "totally incredible," while Drs. Pope and Morowitz were "logical and highly believable." Moreover, the judge found plaintiff's testimony about his fear of cancer to be both unexaggerated and "believable," noting his perception that plaintiff "... has a genuine, real believable fear of cancer." We cannot say the damage verdict here constitutes a "miscarriage of justice under the law." R. 2:10-1. The evidence produced by plaintiff, which the jury plainly accepted, showed the existence of asbestosis which is untreatable and progressive, as well as a well-founded fear of cancer, both of which resulted from his exposure to Keene's asbestos. The damages awarded for these injuries and that fear do not appear to be so high as to be unjust under the circumstances of this case.

IV.
Finally, Keene argues the award of prejudgment interest in this case was an abuse of discretion, characterizing this litigation as an "exceptional case." Pursuant to R. 4:42-11(b) prejudgment interest is assessed upon a damage award in a products liability action, "... provided that in exceptional cases the court may suspend the running of such prejudgment interest." The court's power to suspend prejudgment interest "... should, however, be most cautiously exercised, and always with consideration of the underlying purpose and philosophy of the rule  namely that prejudgment interest is not a penalty but is rather a payment for the use of money." Pressler, Current *295 N.J. Court Rules, Comment 8, R. 4:42-11(b) (1992). Keene argues this case is exceptional because the asbestos industry is financially troubled. We disagree and note that our decision in Dall'Ava v. H.W. Porter Co., 199 N.J. Super. 127, 488 A.2d 1036 (App.Div. 1985) upon which Keene relies, is not to the contrary. In Dall'Ava, we did not suspend all prejudgment interest, but rather only suspended that interest accruing during a four-month period when the litigation was judicially stayed because of the bankruptcy of a co-defendant, Johns-Manville. 199 N.J. Super. at 131, 488 A.2d 1036. Because the defendant in Dall'Ava had no part in delaying the litigation, we reasoned that this was an "exceptional case" under R. 4:42-11(b), and that the award of prejudgment interest would be unfair. Id. We viewed the four-month stay of proceedings in the Dall'Ava case as "no different than if the filing of the complaint had been delayed four months." Id. Significantly, at no point did we imply prejudgment interest was being suspended because of some claim of financial difficulties of the asbestos industry arising from mass tort litigation. Instead, it was the court-ordered stay of proceedings that made the Dall'Ava case "exceptional." Moreover, we note no judgment awarding prejudgment interest has yet been entered and thus this issue is premature.
The judgment entered on the jury verdict is, thus, affirmed.
NOTES
[1] Plaintiff initially sued numerous asbestos manufacturers whose products he claimed he was exposed to. All but two of the defendants settled prior to trial; Keene and Owens-Illinois remained. Owens has, apparently, paid its judgment against it and has not appealed.
[2] We note in this respect the only judgment thus far entered on the record is the clerk's entry of a judgment in the amount of $406,000 with costs. There is no judgment granting prejudgment interest.
[3] To the extent plaintiff suggests this burden of proof in asbestos cases has been removed by Beshada v. Johns-Manville Products Corp., 90 N.J. 191, 447 A.2d 539 (1982), we disagree. Beshada concerns solely theelement of proving asbestos products are defective. It has nothing to do with the issue of causation.
[4] Where a defendant does present evidence which rebuts the presumption and where there thus is a jury issue on defect causation, an issue arises as to whether and what the jury should be instructed concerning the presumption. We express no view on that issue. But see Butz v. Werner, 438 N.W.2d at 517-18.
[5] For the purposes of this case, it was stipulated at trial that predecessor liability applied to Keene.