282 N.J. Super. 569 (1995)
660 A.2d 1236
TERESA THOMAS AND WILLIAM THOMAS, PLAINTIFFS-APPELLANTS,
v.
TOYS "R" US, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 31, 1995.
Decided July 10, 1995.
*576 Before Judges MICHELS, KEEFE and HUMPHREYS.
*577 Michael D. Schottland argued the cause for appellants (Schottland, Aaron & Manning, attorneys; Mr. Schottland, Nicholas C. Caliendo & Chryssa Yaccarino, on the brief).
Chris E. Piasecki argued the cause for respondent (Psak & Parker, attorneys).
The opinion of the court was delivered by KEEFE, J.A.D.
Plaintiff Teresa Thomas (Teresa) fell while shopping at defendant Toys "R" Us. She and her husband, William, instituted suit against defendant for damages resulting from that fall. A jury returned a verdict finding defendant 75% negligent and Teresa 25% contributorily negligent. The jury awarded damages as follows: $10,887 for medical expenses; $42,504 for lost wages; $11,012 for future lost income; $12,500 for pain and suffering; and $0 for William's per quod claim. The total judgment in favor of Teresa was $76,903. The judge molded the verdict in accord with N.J.S.A. 2A:15-97 as follows: $1,642 for medical expenses; $6,334 for lost wages; $0 for future lost wages; and $9,375 for pain and suffering.
Plaintiffs' motion for an additur or a new trial was denied. Plaintiffs now appeal and present the following issues for resolution.
POINT I THE TRIAL COURT IMPROPERLY DENIED PLAINTIFFS A NEW TRIAL AND/OR ADDITUR ON BOTH THE ISSUES OF DAMAGES AND LIABILITY
POINT II THE TRIAL COURT MADE TWO ERRONEOUS EVIDENTIAL RULINGS RESULTING IN A MANIFEST DENIAL OF JUSTICE
POINT III THE COURT'S TREATMENT OF THE COLLATERAL SOURCE RULE WAS IMPROPER
A. The Trial Court Committed Reversible Error By Not Having An Evidentiary Hearing Before Molding The Verdict as to Collateral Sources.
B. The Court Miscalculated Plaintiff's Medical Benefits Resulting in an Improper Application of the Collateral Source Rule.
C. The Trial Court Improperly Reduced Plaintiff's Lost Wage Award.
D. The Trial Court Erroneously Used Plaintiff's Social Security Benefits as a Set-off in Violation of Federal Preemption.
*578 We have carefully reviewed the record in light of plaintiffs' contentions which were thoroughly and articulately presented in their appellate briefs and at oral argument. However, we are satisfied, for the reasons stated herein, that there is no warrant for our intervention, and that the judgment under review must be affirmed.

I
In order to preserve a "weight of the evidence" issue for appellate review, the party seeking to advance the issue must make a timely motion for a new trial. In this case, the trial judge ruled that plaintiffs' motion for a new trial was not filed and served in a timely fashion. However, he addressed the merits of plaintiffs' motion. Although the trial judge ruled on the merits of the motion, the procedural issue has been preserved for appellate review. Defendant urges that the trial judge was correct in his ruling on the motion, and that we need not address the merits of the weight of the evidence issue now presented by plaintiffs. Plaintiffs, on the other hand, maintain that they substantially complied with R. 4:49-1(b), and are not procedurally barred. We agree with plaintiffs' contention.
A motion for a new trial "shall be served not later than 10 days after ... the return of the verdict of the jury." R. 4:49-1(b). The period begins to run from the date the verdict is received in open court, and it is a non-relaxable rule, even in extenuating circumstances, R. 1:3-4(c). Spedick v. Murphy, 266 N.J. Super. 573, 587-588, 630 A.2d 355 (App.Div.), certif. denied, 134 N.J. 567, 636 A.2d 524 (1993). However, we have recognized that the requirements of the rule are met in situations where there is "substantial compliance" with its terms. Stegmeier v. Saint Elizabeth Hosp., 239 N.J. Super. 475, 571 A.2d 1006 (App.Div. 1990) (finding substantial compliance with the rule where the motion papers were delivered to an independent carrier within the ten day time period). In this case, substantial compliance occurred when plaintiffs attempted to deposit the motion papers at the *579 Freehold post office on a business day during normal business hours, but were prevented from doing so because of an unforeseen incident that required the post office to be closed.[1] Thus, where there has been substantial compliance with the rule, and the opposing party has not been prejudiced by the non-literal compliance, we hold that R. 4:49-1(b) was not violated.
We now turn to the merits of the issue, and the appropriate standard of review. This court must defer to the trial court in those areas where the trial court has expertise, or a "feel of the case," e.g., the credibility or demeanor of the witnesses. Outside such areas, an appellate court is permitted to make an independent determination of whether a miscarriage of justice occurred. Carrino v. Novotny, 78 N.J. 355, 360, 396 A.2d 561 (1979); Baxter v. Fairmont Food Co., 74 N.J. 588, 597-598, 379 A.2d 225 (1977). "[A] jury verdict, from the weight of the evidence standpoint, is impregnable unless so distorted and wrong, in the objective and articulated view of the judge, as to manifest with utmost certainty a plain miscarriage of justice." Carrino, supra, 78 N.J. at 360, 396 A.2d 561. Further, judges are admonished not to readily substitute their own judgment for that of the initial factfinder. Baxter, supra, 74 N.J. at 597-598, 379 A.2d 225. Thus, the initial factfinder's judgment is entitled to considerable respect and should be overturned only after the reviewing judge has carefully scrutinized the record and determined that to uphold the judgment would result in a manifest denial of justice. Ibid. It is only when the judgment is accompanied by a sense of "wrongness" that it should be disturbed on review. Id. at 599, 379 A.2d 225 (quoting State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964)).
Applying those standards to this case, we are satisfied that there was sufficient, credible evidence in the record to justify the *580 jury's conclusion that Teresa was 25% negligent. Notwithstanding the defect in the floor caused by the missing tile, the jury could have concluded that defendant placed a yellow warning sign on the floor marking the place where the tile was missing, and that a reasonable shopper, such as Teresa, could have and should have observed it.
As to the quantum of damages awarded to Teresa for her injuries, the record reveals credibility issues that are traditionally the exclusive province of a jury to resolve. A significant aspect of the case, and a factor that the trial judge relied upon in analyzing the issue, was the video tape of Teresa's activities, which belied her assertion that she could not perform ordinary functions, such as carrying her child or driving a vehicle. Further, her doctor never articulated that her injuries were such that they would prevent her from driving, doing laundry, or other such activities. Moreover, the medical evidence presented to the jury did not demonstrate any objective findings of injury.
We reach the same result with respect to the jury's verdict on William's per quod claim. The video tape of Teresa's activities clearly affected the weight to be given his testimony concerning how her allegedly diminished ability to function impacted on his life. Further, William's testimony contained inconsistencies concerning his employment, an issue properly developed and explored by defense counsel on cross-examination.

II
Plaintiffs argue here that the trial judge made two erroneous evidentiary rulings. The first centers on an X-ray that Teresa's doctor had in his file that was discovered by plaintiffs' counsel for the first time at trial. The second ruling was permitting defense counsel to question Teresa about when she hired an attorney.
Plaintiffs' counsel first discovered the X-ray report at trial, on June 14, 1994, while preparing the doctor for his testimony. The X-ray was taken on January 31, 1994. The radiologist reported that the X-ray revealed a straightening of Teresa's *581 lumbar lordosis. It was the only objective finding of injury that plaintiff had. Defense counsel objected based on surprise and prejudice, and the trial court did not admit the X-ray report. The judge explained that the rules of discovery demanded full and fair disclosure, and the admission of an X-ray on the day of trial would prejudice defendant. However, the judge prohibited defense counsel from cross-examining Teresa's doctor on the fact that X-rays were negative so the jury would not be given a false impression. During cross-examination, defense counsel covered other objective tests that Teresa underwent, the EMG, a neurological exam, a bone scan and MRIs, and the fact that they were all negative.
The discovery rules are to be construed liberally and broadly to facilitate the search for the truth during litigation. However, "[c]oncealment or surprise are not to be tolerated in a modern judicial system." Lang v. Morgan's Home Equipment Corp., 6 N.J. 333, 338, 78 A.2d 705 (1951). A trial judge can suspend the imposition of sanctions in three scenarios:
(1) absence of a design to mislead or conceal  as, for example, mistake, inadvertence, excusable neglect, or honest misunderstanding; (2) absence of the element of surprise if the evidence is admitted; and (3) absence of prejudice which would result from the admission of the evidence.
[Branch v. Emery Transportation Co., 53 N.J. Super. 367, 376, 147 A.2d 556 (App.Div. 1958).]
The trial court is vested with discretion in resolving such an issue and can impose the sanction of exclusion if such an outcome is just and reasonable. Westphal v. Guarino, 163 N.J. Super. 139, 145-146, 394 A.2d 377 (App.Div.), aff'd o.b., 78 N.J. 308, 394 A.2d 354 (1978). Not every failure to apprise opposing counsel of additional information or witnesses results in testimonial exclusion. See Gaido v. Weiser, 227 N.J. Super. 175, 192-93, 545 A.2d 1350 (App.Div.), aff'd, 115 N.J. 310, 558 A.2d 845 (1988) (Defendant's medical expert's opinion that varied from synopsis provided with interrogatory was not excluded because trial court gave plaintiff's counsel opportunity to depose doctor and new testimony revealed no new theory of the case of which plaintiff's attorney was not aware.); Amaru v. Stratton, 209 N.J. Super. 1, 14, 506 A.2d 1225 *582 (App.Div. 1985) (Trial court's decision not to exclude testimony upheld because contested testimony was based on pretrial discovery and did not pose threat of surprise or prejudice.); Brown v. Mortimer, 100 N.J. Super. 395, 242 A.2d 36 (App.Div. 1968) (Witness permitted to testify whose name had not been supplied by filing of timely amendment to interrogatory.)
In Gaido, supra, and Brown, supra, the trial judges refrained from excluding the evidence because the evidence was in line with the theory of the case, Gaido, supra, 227 N.J. Super. at 193, 545 A.2d 1350, and it was conceded that a party was not prejudiced or surprised when a witness was called to testify. Brown, supra, 100 N.J. Super. at 401-402, 242 A.2d 36. Here, on the other hand, the X-ray could not have been anticipated in view of the absence of any report of objective findings by Teresa's doctor. Thus, surprise is clearly evident. More importantly, prejudice is significant here because defendant had prepared a case built around a theory that no objective medical findings through X-rays or MRIs were reported. Likewise, defense counsel would not have been prepared to cross-examine Teresa's doctor or prepare his own expert witness on the significance of the X-ray. Thus, the trial judge did not err by excluding reference to the X-ray.
A related issue presented is whether the judge erred by not declaring a mistrial or adjourning the case to allow the parties to adjust to the new evidence. Generally, a trial judge is not obligated to grant an adjournment or declare a mistrial to allow the parties to prepare and research the evidence. The ruling is discretionary. Simply stated, unless the judge's decision to exclude the evidence created a manifest denial of justice, the decision on exclusion must stand. State v. Carter, 91 N.J. 86, 106, 449 A.2d 1280 (1982).
The critical aspect of this issue is whether the evidence excluded was pivotal to plaintiffs' case. In Ratner v. General Motors Corp., 241 N.J. Super. 197, 574 A.2d 541 (App.Div. 1990) the excluded evidence was the imprint of plaintiff's shoe on the brake in an automobile. Plaintiff's theory of the case was self-acceleration; *583 thus, the imprint was the proverbial "smoking gun." Id. at 203, 574 A.2d 541. Plaintiff's case disintegrated without this evidence as no expert could find a defect in the vehicle's acceleration system. Ibid. We noted that the element of surprise was not created by the plaintiff or her attorney, and that they were as surprised as defendant. Ibid. Further, prejudice was limited as defendant would not have been inconvenienced by an adjournment or mistrial, as defense counsel conceded at oral argument. Ibid. Thus, given the pivotal nature of the evidence as compared to the elements of surprise and prejudice, the exclusion was not just and reasonable and a denial of justice had occurred. Ibid.
Plaintiffs rely heavily on Ratner. However, we find it clearly distinguishable on the facts. Here, Teresa presented objective findings of spasm through the testimony of her doctor.[2] All objective tests, other than the one X-ray, were negative. Thus, even if the doctor was permitted to refer to the X-ray report, it was at best simply corroborative of his own detection of spasm. The evidence was not the "smoking gun" evidence upon which the Ratner decision turned.
Plaintiffs' second objection occurred during Teresa's cross-examination, when defense counsel asked when she filed the complaint against defendant. Plaintiffs objected and argued that the line of questioning invaded the attorney-client privilege and involved a statute of limitations issue. The question was limited by the judge to when plaintiff hired her attorney. We find no error here. It was certainly not a focal point of the case and had some bearing on plaintiffs' motivations and credibility.

III
Plaintiffs argue that the trial judge incorrectly applied the collateral source rule. Essential to the resolution of this issue is N.J.S.A. 2A:15-97 which reads in pertinent part:

*584 In any civil action brought for personal injury, . .., if a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits, ..., shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.
[N.J.S.A. 2A:15-97.]
Kiss v. Jacob, 268 N.J. Super. 235, 633 A.2d 544 (App.Div. 1993), rev'd on other grounds, 138 N.J. 278, 650 A.2d 336 (1994) provides guidance for the resolution of the issues presented. In that case, the Supreme Court stated that the purpose of N.J.S.A. 2A:15-97 was "to do away with the common-law collateral source rule." Id. at 281, 650 A.2d 336. We similarly concluded that: "The overriding legislative intent of the Legislature in adopting N.J.S.A. 2A:15-97 was to prevent a claimant from receiving benefits beyond the damages awarded under a judgment entered and to relieve defendants and insurance companies from having to compensate plaintiffs for damages in excess of the total amounts of their losses." Kiss, supra, 268 N.J. Super. at 247, 633 A.2d 544. The focus of the act was to protect and relieve the burden placed on insurance companies when a plaintiff's benefits are cumulative. Id. at 248, 633 A.2d 544. "No legitimate public interest is served in this case, or in many tort cases, in allowing plaintiff to receive double recovery for his or her actual losses and damages and thus compelling the carrier for the tortfeasor to pay benefits more than once." Id. at 249, 633 A.2d 544. The benefits that the Legislature focused upon in enacting N.J.S.A. 2A:15-97 include life- or health-insurance policies, social security and welfare payments, and pension benefits. Kiss, supra, 138 N.J. at 282, 650 A.2d 336 (quoting Statement to Senate Bill No. 2708 (Nov. 23, 1987)).

A
Plaintiffs contend that the trial judge erred because he failed to hold an evidentiary hearing before he molded the verdict *585 based on N.J.S.A. 2A:15-97. The trial judge opined that N.J.S.A. 2A:15-97 does not require a plenary hearing in every case. We agree.
The statute simply provides that "[a]ny party to the action shall be permitted to introduce evidence regarding any of the matters described in this act." N.J.S.A. 2A:15-97. Courts are to give words their common and ordinary meaning, unless instruction in the statute dictates otherwise. Great Atlantic and Pacific Tea Co., Inc. v. Borough of Point Pleasant, 137 N.J. 136, 644 A.2d 598 (1994). The above quoted language does not support plaintiffs' interpretation, that a trial judge must conduct a plenary hearing on the collateral source implications. Rather, it simply stands for the proposition that either party can provide supporting documents or affidavits to argue the application of the statute.
Plaintiffs argue that this court's decision in Serratore v. Nardi, 237 N.J. Super. 566, 568 A.2d 573 (App.Div.), certif. denied, 122 N.J. 131, 584 A.2d 206 (1990) should govern because the PIP statute involved in that case, N.J.S.A. 39:6A-12, is the counterpart to N.J.S.A. 2A:15-97. Plaintiffs' reliance is misplaced. N.J.S.A. 39:6A-12 deals with the inadmissibility in a civil action of evidence pertaining to monies collectible by an injured person under PIP coverage in order to preclude double recovery. In Serratore, we held that where there is a dispute about coverage, it should be resolved by the judge sitting as a trier of fact. Id. at 571, 568 A.2d 573. We have no quarrel with that result so far as it goes. However, it does not address this statute, nor the relative burden of the parties in creating genuine factual disputes.
The issue presented here is one of first impression because it addresses the procedure to be followed in resolving N.J.S.A. 2A:15-97 disputes. The essence of the statute is that the plaintiff must disclose to the court records of his/her benefits from collateral sources so that the tort recovery can be offset against them. As noted above, the statute permits either party to submit "evidence" to establish that benefits have or have not been received. However, the primary burden is on the plaintiff.
*586 In our view, the procedure to be followed should not differ dramatically from a hearing on a motion for summary judgment in the verbal threshold context of Oswin v. Shaw, 129 N.J. 290, 609 A.2d 415 (1992). Regardless of the fact that it is the defendant who benefits from the statute, and may be the first to bring the matter to the attention of the court, the Legislature made it clear that it is the plaintiff, under N.J.S.A. 2A:15-97, who must supply documents and records showing what duplicate benefits have and will be received. Clearly implied by the procedure is the requirement that plaintiff present the relevant evidence in good faith, just as the opposing party in a summary judgment proceeding must submit an affidavit that is specific and cannot merely rely on the pleadings. Indeed, in the summary judgment context, sanctions can be imposed for the submittal of evidence in bad faith. R. 4:46-5(b).
Most, if not all, evidence concerning a plaintiff's benefits can be proven through documents. We expect that proceedings of this nature will rarely require determinations of credibility. Thus, a plenary hearing will be the exception, and is warranted only where the plaintiff has fully complied with the good faith disclosure requirements implicated by the statute, but a fact issue remains.
Here, plaintiff failed to provide the necessary support and documentation to prove that she had not received a double recovery. Most of the evidence produced was supplied by defendant. For example, defendant supplied the employment records which facially state that plaintiff's bills were paid at an 80% rate. Plaintiff never explained why the copayment rate should not be 80%, as determined by the judge, or why some bills were not covered. Simply put, plaintiffs failed to sustain their statutorily implied good faith burden of coming forward with documentary evidence relevant to the issue of duplicate benefits. While the trial judge may have stated other reasons for his conclusion, the appeal is from the judgment, not from the judge's reasons. Heffner v. Jacobson, 100 N.J. 550, 553, 498 A.2d 766 (1985). Thus, we *587 affirm the trial judge's decision to apply the 80% copayment factor in determining plaintiff's medical benefits.

B
However, regardless of that determination, plaintiffs also maintain that the trial judge erred in not taking other credits into account when he calculated collateral benefits. Specifically, plaintiffs contend that the judge should have considered the fact that Teresa actually incurred $11,497 in medical bills, while the jury awarded her only $10,887. She contends that the $610 difference should have been credited to her in determining to what extent she received a duplicate medical award. Additionally, Teresa contends that her one-third counsel fee should be considered as a credit to her in deciding what benefits were duplicated, regardless of whether they are medical or income replacement benefits.
We reject both arguments essentially based upon the plain language of the statute. The statute requires any benefit received by a plaintiff which "duplicates" a benefit received in the jury verdict "be deducted from any award recovered by plaintiff [.]" N.J.S.A. 2A:15-97 (emphasis added). Thus, the judge is required by statute to deduct from the jury "award" the amount received by a plaintiff from medical insurance, without considering other factors. Plaintiffs' interpretation would have the effect of requiring the tortfeasor to pay a portion of a medical expense that the jury apparently did not find was reasonably connected to the accident. In this case, the trial judge took 80% of the $10,887 awarded by the jury as the amount of plaintiff's duplicate benefit, not 80% of the amount of the medicals plaintiff attempted to prove. He was correct in doing so.
Likewise, the attorney fee is not a factor in the jury "award" and, thus, cannot be a factor in determining to what extent a plaintiff has received a duplicate benefit. Traditionally, our courts have required litigants to bear their own costs of litigation. Right to Choose v. Byrne, 91 N.J. 287, 450 A.2d 925 *588 (1982). Where the Legislature has intended a different result, it has had no difficulty in expressing itself. Indeed, our court rules provide that, except as provided by the rules themselves, attorney fees cannot be awarded unless "permitted by statute." R. 4:42-9(a)(8); see Pressler, Current N.J. Rules, comment 2 on R. 4:49-9. In this case, a consideration of counsel fees in deciding the issue of duplicate benefits, would have the effect of awarding counsel fees in favor of plaintiffs on those claims, a result that should not be reached without specific legislative endorsement.

C
Plaintiffs argue that the judge incorrectly reduced Teresa's past lost wage award. The jury awarded $42,504 for lost wages. The judge reduced that amount by Teresa's social security benefits and State temporary disability payments. He then reduced the net award by Teresa's 25% contributory negligence and arrived at a lost wage award of $6,334. We find no error in the judge's calculation warranting a reversal.
As to future lost wages, plaintiffs argue that there is no duplication of benefits because Teresa will receive social security benefits less than her monthly salary. The trial judge reduced Teresa's future lost wages to zero because he believed the State or federal benefits will be greater than the sum awarded by the jury. The judge accurately observed that this issue had not been as fully documented as the other wage-connected issues. We are satisfied on the record presented to the trial judge that there is no abuse of discretion exhibited by his conclusion in view of the plaintiff's obligation to provide the necessary information on such matters.
Lusby By and Through Nichols v. Hitchner, 273 N.J. Super. 578, 642 A.2d 1055 (App.Div. 1994) held that N.J.S.A. 2A:15-97 does not apply to Medicaid payments because such payments are reimbursable. Plaintiffs attempt to extend that holding to the present case with respect to Teresa's receipt of social security benefits, inasmuch as those benefits are based upon the amount *589 Teresa has placed into the system. However, the concepts are clearly distinguishable. Medicaid reimbursement is federally mandated. Thus, a plaintiff receiving Medicaid benefits will not receive a double recovery, assuming the federal law will be observed. There is no such federal mandate for social security benefits. That is, they are not reimbursable to the federal government if the recipient receives a replacement benefit.

D
Finally, plaintiffs argue that the federal social security statute, 42 U.S.C.A. § 424a, preempts the State from reducing an injured person's social security benefits by a tort award. The argument is without merit. See Lamb v. Connecticut Gen. Life Ins. Co., 643 F.2d 108, 110-111 (3rd Cir.1981), cert. denied, 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1982) (Reduction of payments under group disability insurance policy reflecting amount of social security benefits received does not violate the Social Security Act.). The amount of social security benefits received by plaintiff has not been diminished by State law. Plaintiff has received and will continue to receive whatever social security benefits federal law and regulations permit. Ibid. The State law under review, N.J.S.A. 2A:15-97, simply does not permit a plaintiff to duplicate those benefits through a tort award. Thus, there is no conflict between State and federal law. See Feldman v. Lederle Laboratories, 125 N.J. 117, 133-134, 592 A.2d 1176 (1991), cert. denied, ___ U.S. ___, 112 S.Ct. 3027, 120 L.Ed.2d 898 (1992). Teresa's social security benefits have not been set off or diminished by State action.
Affirmed.
NOTES
[1] Because this motion was made before September 1, 1994, service of the motion for a new trial was complete upon mailing. However, as a result of the September 1, 1994, amendment, service of a motion for a new trial is complete only upon receipt of the papers by opposing counsel. R. 1:6-3.
[2] However, the doctor was permitted to testify about finding spasm, although it was not mentioned in his report.