709 A.2d 808

GREGORY FAYER, PLAINTIFF–RESPONDENT, v. KEENE CORPORATION; PITTSBURGH CORNING CORPORATION; ACANDS, INC.; ANCHOR PACKING CORPORATION; ARMSTRONG WORLD INDUSTRIES, INC.; BRAND INSULATION COMPANY; PORTER HAYDEN COMPANY; DURAMETALLIC CORPORATION; FIBREBOARD CORPORATION; FLEXITALLIC GASKET COMPANY, INC.; FLINTKOTE BUILDING PRODUCTS; GAF CORPORATION; GARLOCK, INC.; NATIONAL GYPSUM COMPANY; TURNER AND NEWALL, PLC; AND U.S.

■■■■■■

GYPSUM COMPANY, DEFENDANTS, AND OWENS–CORNING,[1] DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued February 4, 1998—Decided April 28, 1998.

■■■

■■■

────────

■■■■■

■■■

───────

[1] Designated as "Owens–Corning Fiberglas Corp." in the original complaint.

Before Judges BAIME, BROCHIN and WEFING.

*Frederick E. Blakelock* argued the cause for appellant (*Tucker & Goldstein*, attorneys; *Mr. Blakelock*, on the brief).

*Michael A. Galpern* argued the cause for respondent (*Greitzer & Locks*, attorneys; *Mr. Galpern* and *Heidi P. Rubin Cohen*, on the brief).

The opinion of the court was delivered by

BROCHIN, J.A.D.

From approximately 1969, when plaintiff Gregory Fayer was eighteen years old, until some time after 1976, he worked at jobs where the air was heavy with microscopic asbestos fibers from insulation materials that contained asbestos. Inhaling the asbestos fibers injured his lungs. He sued seventeen of the companies which manufactured and sold products containing the asbestos to which he was exposed. All of the defendants except Owens–Corning settled or were severed before trial. The jury found that he had suffered damages of $100,000. Of that amount, $35,000 represented compensation for "pain, suffering, and disability," and $65,000 for the cost of "future medical surveillance due to his asbestos-related injuries." The jury also found that Owens–Corning was responsible for fifteen percent of his exposure to asbestos fibers and, therefore, for that percentage of the damage award.

The theory of Fayer's cause of action was that the products containing asbestos were defective. The sole defect which he asserted at trial was that they lacked adequate warnings that exposure to asbestos was dangerous because minute fibers that would be released into the air were likely to be inhaled and posed a grave risk of causing serious disease, including cancer of the lungs and other organs.

The trial judge instructed the jury that he had found as a matter of law that the asbestos-containing products of all the defendants were defective because their warnings were inadequate. He also instructed the jury that he had ruled "as a matter of law, that ... plaintiff has sustained an asbestos injury, to wit scarring of the pleura." Owens–Corning does not contest those instructions on appeal, although it does dispute the seriousness of plaintiff's injuries.

Two proximate cause issues were seriously contested at trial. One was whether and to what extent Owens–Corning's asbestos fibers were a proximate cause of the injuries to plaintiff's lungs and the other was whether the inadequacy of the warnings provided by the manufacturers and sellers of asbestos products

was a proximate cause of plaintiff's allowing himself to be exposed to asbestos fibers. *See Campos v. Firestone Tire & Rubber Co.,* 98 *N.J.* 198, 209, 485 *A.2d* 305 (1984) (" 'If the basis for recovery under strict liability is inadequacy of warnings ..., then plaintiff would be required to show that an adequate warning or instruction would have prevented the harm.' ") (citation omitted). To carry his burden of proof on the second issue, plaintiff relied on the "heeding presumption," *see Coffman v. Keene Corp.,* 257 *N.J.Super.,* 279, 290, 608 A.2d 416 (App.Div.1992), *aff'd,* 133 *N.J.* 581, 628 *A.2d* 710 (1993), and on his own testimony that he would not have exposed himself to an atmosphere heavy with asbestos dust if he had been warned of the risks. To controvert those proofs, Owens–Corning relied on plaintiff's testimony and interrogatory answers from which the jury would have been entitled to find that he had continued to work in the presence of asbestos even after he knew of its dangers. From that finding, the jury might have inferred that the absence of adequate warnings was not a proximate cause of plaintiff's exposure and of his resulting condition because the presence of adequate warnings would probably not have caused him to alter his conduct.

That is the context in which Owens–Corning argues on appeal that the trial court's jury instructions on proximate cause were inadequate and that its answer to an inquiry from the jury on that issue during its deliberations was confusing. Owens–Corning asserts as an additional reason for a new trial that the court erred by permitting plaintiff, contrary to the terms of the class action settlement of all claims against Johns Manville, to waive his claim against that company after Owens–Corning had already delivered its opening framed in reliance on plaintiff's election to assert the claim. Owens–Corning also contends that it is entitled to a new hearing under the collateral source rule because, following the verdict, the court should have compelled plaintiff to disclose the insurance payments he will receive to defray his costs of future medical surveillance and that he should have deducted those payments from his award.

During summations, the attorneys for both parties talked about the extent of plaintiff's exposure to asbestos fibers from Owens–Corning's products and also about whether adequate warnings would have caused plaintiff to avoid asbestos exposure or whether warnings would have been futile because his apprenticeship training had alerted him to everything adequate warnings could have taught him. The attorney for Owens–Corning framed the issue of proximate cause as follows:

> One, I think the Judge is going to instruct you, there's an issue as to proximate cause. You have to decide whether or not, and it will be in his charge if you listen carefully, whether or not the failure to warn, not the fact that the product contained asbestos, but whether or not the failure to warn was a proximate cause of the injury. That's a preliminary question. Then you have to decide whether exposure to my client's products was a substantial, substantial contributing factor to the injuries. And if it wasn't, you should find in our favor.

Of the two proximate cause issues—Owens-Corning's asbestos as a proximate cause of the disease and the inadequacy of warnings as a proximate cause of plaintiff's permitting himself to be exposed to asbestos fibers—the court dwelled only on the first. It instructed the jury repeatedly and at some length about the necessity of deciding whether asbestos dust from the products of each of the sellers was a substantial contributing cause of plaintiff's injuries. The only reference to the issue of whether failure to warn was a proximate cause of plaintiff's injuries was the following:

> Plaintiff is entitled to the presumption that in the absence of proof to the contrary he would have heeded a warning if the same had been placed on the product. Therefore, what makes these asbestos containing products defective products is the failure of the defendants to provide any warning. You must, therefore, accept that the asbestos products in this case are legally unsafe and defective products. *You must determine if the defect failure to warn was a proximate cause of the plaintiff's injuries and damages.*
>
> [ (Emphasis added).]

The following is how the judge summarized his charge on proximate cause:

> In plain English, there were 11 defendants ... sued. Ten defendants, you don't care what they settled for. You look at Mr. Fayer's injuries today. You look at all of the defendants. Was or were those defendants' products defective?

If their product was defective and their product contributed to Mr. Fayer's injuries, then you say ... those that you find distributed a defective product and that defective product was a substantial contributing cause to Mr. Fayer's injuries and/or damages, you will then enter judgments against those defendants and that percentage of liability that you find they contributed to his injuries.

The verdict sheet submitted to the jury contained five questions. The first listed eleven sellers of asbestos products and asked "[W]hich, if any, ... were [sic] a substantial contributing cause of plaintiff['s] ... asbestos-related injuries" and what "percentage of exposure [was] attributable to each." The second question asked, "What amount of money, if any, would reasonably and fairly compensate plaintiff for his pain, suffering, and disability ... due to his asbestos-related injuries?" The third and fourth questions asked the jury to decide whether plaintiff suffered "from a serious fear of cancer and/or progression of present injuries" and, if he did, to provide the appropriate amount of compensation. (The jury found that he did not suffer from, and was not entitled to compensation for, such a fear.) The last question asked for the amount of money which would fairly compensate plaintiff for adequate future medical surveillance.

Owens–Corning's attorney objected to the absence of any question asking "whether or not the failure to warn was the proximate cause of plaintiff's injuries." The judge refused to include such a question. He gave the following explanation:

The Court has already found that [plaintiff] sustained an injury as a result of his exposure to asbestos, so says Pope; so says Auerbach [both parties' medical experts]. I've also ruled that the alleged warning giving [sic] by Owens ... was an inadequate warning and you take those two together with the heeding presumption that if a proper [warning] had been given, he would have heeded the same. So, therefore, the question of whether or not ... [failure to warn] was a proximate cause does not go on the verdict sheet.

The jury interrupted its deliberations to ask the following question (among others):

What amount of money if any would reasonably and fairly compensate plaintiff past and future due to his asbestos-related injuries *due to improper warning labels on products?* Why was the above question not on the verdict sheet list?

[ (Emphasis added).]

The first portion of this question, up to the underlining, substantially quotes the second question on the verdict sheet; the portion which we have underlined was added by the jury. The court answered, "This question must be taken together with the Court's charge as it relates to proximate cause."

■ Interpreted against the background of the attorneys' emphasis during their summations on whether inadequate warnings were a proximate cause of plaintiff's injuries, the inquiry from the jury seems to be asking whether that issue was one which it had to decide. Because there was some evidence that plaintiff knew about the dangers of asbestos, the issue was, of course, a jury question. The court should have dispelled the jury's confusion, but it failed to do so. *See State v. Carswell,* 303 *N.J.Super.* 462, 480, 697 *A.*2d 171 (App.Div.1997) ("A judge's obligation is to answer the [jury's] question ... and, in doing so, to clear the confusion which generated the inquiry.") (citation omitted); *State v. Graham,* 285 *N.J.Super.* 337, 342, 666 *A.*2d 1372 (App.Div.1995) (" 'When a jury requests clarification, the trial judge is obligated to clear the confusion.' ") (citation omitted). The court's failure to provide an adequate answer to the jury's question was prejudicial to Owens–Corning. Owens–Corning is entitled to a retrial of the issue of whether its failure to warn was a proximate cause of plaintiff's exposure to asbestos fibers from its products.

The question raised by the court's acceptance of plaintiff's late election to waive his damage claim against Johns Manville is unlikely recur on remand. It is therefore unnecessary for us to decide the issue, and we decline to do so.

■ That leaves the question of whether, pursuant to *N.J.S.A.* 2A:15–97, Owens–Corning was entitled to a credit against plaintiff's damages for his prospective medical insurance benefits. Insofar as pertinent, that statute reads as follows:

... [I]f a plaintiff receives or is entitled to receive benefits for the injuries allegedly incurred from any other source other than a joint tortfeasor, the benefits ... shall be disclosed to the court and the amount thereof which duplicates any benefit contained in the award shall be deducted from any award recovered by the plaintiff, less any premium paid to an insurer directly by the plaintiff or by any

member of the plaintiff's family on behalf of the plaintiff for the policy period during which the benefits are payable. Any party to the action shall be permitted to introduce evidence regarding any of the matters described in this act.

[*Ibid.*]

The purpose of this statute is "to prevent plaintiffs from obtaining a double recovery" and, "except where PIP payments are involved, to shift the burden, at least to some extent, from the liability and casualty insurance industry to health and disability third-party payers." *Lusby v. Hitchner*, 273 *N.J.Super.* 578, 591, 642 *A.*2d 1055 (App.Div.1994); *see Kiss v. Jacob*, 138 *N.J.* 278, 281–82, 650 *A.*2d 336 (1994).

In the present case, the court denied any offset, relying on plaintiff's certification which states that he learned "through conversations with several persons," including the business agent for his union, that either his health insurance would not pay for medical surveillance or he would be required to reimburse the union welfare fund. Owens–Corning contends that this certification does not satisfy plaintiff's disclosure obligations because it relies on hearsay and does not describe the terms of plaintiff's insurance with specificity and by reference to the pertinent policy or policies or other authoritative documentation.

In *Thomas v. Toys "R" Us, Inc.*, 282 *N.J.Super.* 569, 585, 660 *A.*2d 1236 (App.Div.), *certif. denied*, 142 *N.J.* 574, 667 *A.*2d 191 (1995), we held that *N.J.S.A.* 2A:15–97 requires plaintiff to shoulder the burden of disclosing his records of benefits from collateral sources so that his tort recovery could be offset against them. We stated, "[T]he primary burden is on the plaintiff," explaining that "the procedure to be followed should not differ dramatically from a hearing on a motion for summary judgment in the verbal threshold context." *Id.* at 585–86, 660 *A.*2d 1236. A plaintiff must "present the relevant evidence in good faith, just as the opposing party in a summary judgment proceeding must submit an affidavit that is specific and cannot merely rely on the pleadings." *Id.* at 586, 660 *A.*2d 1236.

 If, without a satisfactory explanation, a plaintiff does not fulfill that statutory obligation, the trial court must infer that he is unable to disprove his entitlement to collateral benefits which would offset the part of his damages which is compensation for medical expenses. In determining by what amount, if any, damages should be reduced, it should be borne in mind that "only . . . those benefits to be paid post-judgment to which plaintiff has an established, enforceable legal right when judgment is entered and which are not subject to modification based on future unpredictable events or conditions" should be treated as offsets. *Parker v. Esposito,* 291 *N.J.Super.* 560, 567, 677 *A.*2d 1159 (App.Div.), *certif. denied,* 146 *N.J.* 566, 683 *A.*2d 1162 (1996). "In other words, future collateral benefits are deductible only to the extent that 'they can be determined with a reasonable degree of certainty.' " *Ibid.* (citation omitted).

The judgment appealed from is reversed and the case is remanded for a new trial on the issue of whether plaintiff's failure to warn was a proximate cause of plaintiff's exposure to asbestos. The jury's findings with respect to plaintiff's aggregate damages and the allocation of damages and the court's rulings withdrawing certain liability issues from the jury will remain the law of the case. Following any retrial, a new hearing and determination will be required in accordance with this opinion on the amount, if any, of the proper offset for collateral benefits.

Reversed.