**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0269-23

IBIRONKE MACAULAY,

    Plaintiff-Appellant,

v.

RWJ BARNABAS HEALTH, INC.,
ROBERT WOOD JOHNSON
UNIVERSITY HOSPITAL,
ROBERT WOOD JOHNSON
UNIVERSITY HOSPITAL
SOMERSET CAMPUS,
SALVATORE MOFFA, MD,
MEGAN MADARA, APN,
ELENI PELLAZGU, APN,
ROBERT B. SIGLER,
DIRECTOR OF RESPIRATORY
CARE, JOSE MUJIA, RRT,
ROSA NEWKIRK, CHRISTINA
NARVAEZ, HR DIRECTOR.

    Defendants-Respondents.

_____

Submitted November 13, 2024 – Decided December 20, 2024

Before Judges Gooden Brown and Smith.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket No. L-7133-20.

Hegge & Confusione, LLC attorneys for appellant (Michael Confusione, of counsel and on the briefs).

Apruzzese, McDermott, Mastro & Murphy attorneys for respondents (Mark J. Blunda, of counsel and on the brief; Catherine A. Morris, on the brief).

PER CURIAM

After a trial, plaintiff Ibironke Macaulay appeals the trial court's order of final judgment dismissing her complaint, which included, among other theories, New Jersey Law Against Discrimination and Conscientious Employees' Protection Act claims. She argues that the trial court committed various errors during trial.

We are unpersuaded, and we affirm for the reasons which follow.

I.

We obtain the salient facts from the record.

In 2014, Robert Wood Johnson University Hospital-Somerset Campus ("RWJUH-Somerset") hired plaintiff as an advanced practice nurse ("APN"). In January of 2019, Megan Madara ("Director Madara") became the director of the hospital-based APN and physician assistant staff at RWJUH-Somerset. Director Madara directly supervised plaintiff from January 2019 until July 2020. At the

2

time, the chief medical officer for RWJUH-Somerset, Dr. Salvatore Moffa ("Dr. Moffa"), supervised Director Madara.

On October 23, 2019, plaintiff was involved in an incident where a patient could have been harmed, also known as a "near miss" incident. Plaintiff misheard an emergency code signaling that a patient was having a stroke. Plaintiff was assigned to assist the patient, but incorrectly entered data while ordering a CT scan. Plaintiff corrected the input error before the patient received an incorrect scan, but the mistake was recorded in a hospital incident report, known as a "verge."

On November 1, 2019, plaintiff and several respiratory therapists ("RT") were working on a non-responsive patient when they could not agree on what treatment to provide the patient. The RT called the director of the Respiratory Care Department at RWJUH-Somerset, Jose Mujia ("Director Mujia"), to the scene. According to Director Mujia, plaintiff and the RT were engaged in a "screaming match" when he arrived, and, after Director Mujia instructed the RT to leave, plaintiff began "screaming at [Director Mujia]." Plaintiff filed a verge on November 3, 2019, which contained her explanation of the November 1 incident.

A-0269-23

Over the next few months, plaintiff became embroiled in two more "near miss" incidents. On or about November 27, 2019, plaintiff submitted a telemetry and bolus order for the wrong patient. After being notified of the input error, plaintiff corrected the mistake. This incident was recorded in a verge. On or about January 20, 2020, plaintiff incorrectly input a patient's event time in standard time rather than military time. A nurse communicated this near miss to plaintiff, and plaintiff discussed this near miss with Director Madara.

Plaintiff contracted COVID-19 in April 2020. Upon returning to work, she found certain possessions missing from her work locker. On April 27, she posted a letter on her locker positioned for others to read. In the letter, plaintiff made certain religious references and expressed her belief that someone had "deliberately and purposefully discarded" her belongings. Director Madara obtained a copy of the letter.

In June 2020 plaintiff received her 2019 performance evaluation. During a July 1 meeting with Director Madara about the evaluation, plaintiff became combative. Later that day, another hospital employee, Eleni Pellazgu, informed Director Madara that plaintiff blocked her access to a private hospital call room. Director Madara confronted plaintiff at the room, instructing her to give Pellazgu access. When plaintiff refused to leave, Director Madara reported the

incident to Human Resources. Plaintiff next left the call room to confront Director Madara, but the director instructed plaintiff to leave. Plaintiff then returned to the call room and removed a "house pager," which is meant to remain at the hospital. When Pellazgu informed Director Madara of plaintiff's actions, the director unsuccessfully attempted to contact plaintiff. Later that night, plaintiff spoke with her colleague, Jacqueline Angotti, about the pager and Angotti offered to bring the pager back to the hospital for plaintiff.

After the Pellazgu incident, plaintiff called Clemaine Mitchell, a nurse practitioner at RWJUH-Somerset, and told her plaintiff would serve as a personal reference for her. When Mitchell asked why she needed plaintiff as a personal reference, plaintiff explained that she had heard "rumors" about Mitchell. Mitchell reported the matter to Director Madara, who in turn reported it with Human Resources.

On July 1, Human Resources furloughed plaintiff pending an investigation of the reported incidents.

On October 12, 2020, plaintiff sued multiple defendants, including: RWJUH-Somerset; Dr. Moffa; Director Madara; Pellazgu; Rosa Newkirk; HR Director Narvaez; Director Mujia; Robert B. Sigler, Director of Respiratory Care; RWJ Barnabas Health, Inc. ("RWJBH"); and Robert Wood Johnson

5

University Hospital ("collective defendants"). Plaintiff alleged that defendants violated the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 to -50, by discriminating against her based on her race (Black) and national origin (Nigerian) and violated the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:9-1 to -14, by retaliating against her for filing the November 3 verge. Plaintiff also brought claims of negligent supervision and intentional infliction of emotional distress. Defendants answered, asserting that its employment actions against plaintiff were grounded in legitimate, non-discriminatory reasons based upon plaintiff's behavior and job performance.

Before trial, defendants moved for summary judgment. The trial court granted partial summary judgment: dismissing plaintiff's common law causes of actions for negligent supervision and intentional infliction of emotional distress against all defendants; dismissing all claims against defendants Sigler, RWJ Barnabas Health, and Robert Wood Johnson University Hospital; and dismissing the CEPA claims against individual employee defendants Dr. Moffa, Director Madara, HR Director Narvaez, Director Mujia, Newkirk, and Pellazgu. The court's order left intact plaintiff's CEPA claim against RWJUH-Somerset and her NJLAD claim against RWJUH-Somerset, Dr. Moffa, Director Madara, HR Director Narvaez, Director Mujia, Newkirk, and Pellazgu.

6

Prior to trial, the court granted the remaining defendants' motion in limine to bar Claudette Rawlings, a former employee of RWJUH-Somerset, from testifying as plaintiff's witness.  Making findings, the court stated:

> [I]t doesn't matter what topic [Rawlings is] testifying on.  She was never identified as a witness within the time period provided by the Court Rules. There has not been adherence to the Court Rules. And if there's no adherence to the Court Rules, it is prejudicial to the defense to . . . [call] a witness, literally the day before jury selection . . . . That's unfair to [the defense].[1]

At the close of plaintiff's case, the trial court dismissed Director Mujia, Newkirk, Narvaez, and Pellazgu pursuant to Rule 4:40-1.  Only RWJUH-Somerset, Dr. Moffa, and Director Madara remained as defendants.  On September 13, 2023, the jury returned a verdict for the remaining defendants on the surviving claims.

Plaintiff appeals, contending the trial court erred by:  permitting certain witness testimony; barring Rawlings as a witness; and barring certain rebuttal testimony.

## II.

We review a trial court's evidentiary rulings for abuse of discretion.  State v. Burney, 255 N.J. 1, 20 (2023) (quoting State v. Garcia, 245 N.J. 412, 430

---

[1] Plaintiff did not seek a continuance to permit Rawlings' deposition.

A-0269-23

(2021)). "[T]he decision to admit or exclude evidence is one firmly entrusted to the trial court's discretion." State v. Prall, 231 N.J. 567, 580 (2018) (quoting Est. of Hanges v. Metro. Prop. & Cas. Ins. Co., 202 N.J. 369, 383-84 (2010)). An abuse of discretion occurs "when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002).

When parties fail to object to the admissibility of evidence at trial, however, we review admissibility arguments raised on appeal for plain error. See R. 2:10-2; Tartaglia v. UBS PaineWebber, Inc., 197 N.J. 81, 128 (2008) (citing Fertile v. St. Michael's Med. Ctr., 169 N.J. 481, 493 (2001)). "The mere possibility of error is insufficient for reversal. We must determine whether, in the interests of justice, the cited error had the 'clear capacity for producing an unjust result.'" N.J. Div. of Youth & Family Servs. v. N.S., 412 N.J. Super. 593, 622 (App. Div. 2010) (quoting Tartaglia, 197 N.J. at 128) (internal quotation marks omitted).

Finally, we "may reverse a trial court's judgment if the cumulative effect of a series of errors is so great as to deprive a defendant of a fair trial." Burney, 255 N.J. at 29 (citing Pellicer v. Saint Barnabas Hosp., 200 N.J. 22, 53 (2009)).

"'[T]he predicate for relief for cumulative error must be that the probable effect of the cumulative error was to render the underlying trial unfair.'" Ibid. (quoting State v. Wakefield, 190 N.J. 397, 538 (2007)). "'[I]f the combined effect of multiple errors deprives a party of a fair trial,'" a new trial should be ordered. Ibid. (alteration in original) (quoting Torres v. Pabon, 225 N.J. 167, 191 (2016)).

## III.

### A.

Plaintiff contends that, on eight separate occasions, the trial court erred when it failed to exclude testimony and counsel statements that violated N.J.R.E. 403, 404(b), 405, 608, and 611(a)(1).

Before reviewing each of the alleged errors, we address two preliminary issues. First, the record shows plaintiff's counsel failed to object at trial to any of the eight alleged errors. Therefore, we review each claim using a plain error standard. See R. 2:10-2. Second, the record also shows that, in several instances, plaintiff's counsel introduced the topics now challenged on appeal through direct examination, triggering use of the "opening the door" doctrine. Prall, 231 N.J. at 582 (2018).[2]

---

[2] "The 'opening the door' doctrine is 'a rule of expanded relevancy and authorizes admitting evidence which otherwise would have been irrelevant or inadmissible

Plaintiff "opened the door" to the following four issues on direct examination: her "near miss" incidents; her call with Clemaine Mitchell; her possession of a hospital pager; and her vacation time. Given plaintiff's extensive testimony on several of these issues and their relevancy to plaintiff's termination, Prall, 231 N.J. at 583; see also N.J.R.E. 403, we discern no plain error for permitting cross-examination and testimony from other witnesses on these four issues.

As for the four-remaining alleged errors, we conclude there is no clear capacity for producing an unjust result here.

Plaintiff first argues that the trial court erred by permitting defense counsel's cross-examination of plaintiff regarding a religious reference she made

---

in order to respond to (1) admissible evidence that generates an issue, or (2) inadmissible evidence admitted by the court over objection.'" State v. Prall, 231 N.J. 567, 582 (2018) (quoting State v. James, 144 N.J. 538, 554 (1996)). "In other words, it permits 'a party to elicit otherwise inadmissible evidence when the opposing party has made unfair prejudicial use of related evidence.'" Id. at 582-83 (quoting James, 144 N.J. at 554) (citation omitted). "The doctrine is limited, however, by weighing the probative value against the prejudicial nature of the evidence under N.J.R.E. 403." Id. at 583 (citing James, 144 N.J. at 554). We note plaintiff argues that defense counsel "opened the door" to certain subjects in their opening statements. The "opening the door" doctrine does not apply to opening statements, however. State v. Anastasia, 356 N.J. Super. 534, 543 (App. Div. 2002) ("Opening statements are not evidential and should not be responded to by 'rebuttal' evidence. If improper remarks are made by counsel, the remedy lies in a curative instruction to the jury or, if absolutely necessary, a mistrial.").

in the letter she left at her locker on April 27, and defense counsel's use of that reference during summations. Counsel specifically questioned plaintiff about why she chose to use a Bible verse in her letter,[3] seeking to clarify whether plaintiff had accused co-workers of throwing away her belongings. We discern no prejudice in this line of cross-examination. It was probative on the question of whether plaintiff suffered adverse consequences for posting the letter. Defense counsel's use of the same phrase in closing had no clear capacity for producing an unjust result, and there was no plain error.

Next, plaintiff contends the trial court erred by permitting defense counsel's cross-examination of Rosa Newkirk regarding her family's race. Plaintiff brought CEPA and NJLAD claims against Newkirk, and the NJLAD claim was still viable at the time she testified on September 11, 2023. The subject had sufficient probative value as to Newkirk's intent to discriminate against plaintiff based on race. Where plaintiff's claim against Newkirk was about race, there was no prejudice to her by the cross-examination. We discern no abuse of discretion here.

---

[3] Plaintiff discussed the letter during her direct examination and her counsel did not object to the introduction of the letter into evidence during plaintiff's cross-examination.

A-0269-23

Plaintiff argues during summations the trial court erroneously permitted defense counsel to imply that plaintiff believed one of the hospital doctors had administered an overdose of morphine to a patient. Plaintiff contends there were no facts in evidence to show that a physician caused the overdose of a patient.

Counsel is generally afforded broad latitude in summation to argue any legitimate inference which may be drawn from the evidence. Colucci v. Oppenheim, 326 N.J. Super. 166, 177 (App. Div. 1999). When a summation "cross[es] the line beyond fair advocacy and comment, and ha[s] the ability or 'capacity' to improperly influence the jury's 'ultimate decision making,'" judicial intervention is required. Risko v. Thompson Muller Auto. Grp., 206 N.J. 506, 522 (2011). Appropriate judicial intervention may be sufficient to cure any potential prejudice. Statham v. Bush, 253 N.J. Super. 607, 615 (App. Div. 1992); see City of Linden v. Benedict Motel Corp., 370 N.J. Super. 372, 398 (App. Div. 2004) ("[A] clear and firm jury charge may cure any prejudice created by counsel's improper remarks during opening or closing argument.").

However, "'the [f]ailure to make a timely objection indicates that . . . counsel did not believe the remarks were prejudicial at the time they were made,' and it 'also deprives the court of the opportunity to take curative action.'" Jackowitz v. Lang, 408 N.J. Super. 495, 505 (App. Div. 2009) (quoting State v.

Timmendequas, 161 N.J. 515, 576 (1999)).  Fleeting comments, even if improper, may not require a new trial, especially when the verdict is fair.  Ibid.

Defense counsel's statements regarding the cause of a patient's overdose are, on this record, unsupported.  However, we are not convinced that the statements were so prejudicial as to have a clear capacity to cause an unjust result.  First, counsel did not argue that plaintiff caused the overdose.  Second, the jury could reasonably infer from plaintiff's testimony that the patient's overdose would not have occurred without the overprescription of morphine by an attending physician.  Trial counsel's failure to object leads us to the conclusion that "counsel did not believe the [overdose] remarks were prejudicial at the time they were made."  Ibid.  We decline to find plain error where the trial court did not have "the opportunity to take curative action."  Ibid.

Plaintiff next posits that the trial court erred by permitting Mitchell's testimony about her conversation with plaintiff about a parking spot.  We disagree, as the conversation was relevant to plaintiff's furlough.  The trial court properly admitted this evidence.

Finally, plaintiff argues that the trial court erred by permitting cross-examination of plaintiff regarding a 2019 vacation.  Plaintiff also argues that the trial court should have precluded defense counsel's comments about the vacation

in opening and summation.  Plaintiff contends that the subject of her vacation time was irrelevant to her termination.  We are unpersuaded.

The facts elicited on plaintiff's cross were nearly identical to the facts elicited on her direct.  On cross, plaintiff testified that Director Madara did nothing wrong with scheduling her vacation and did not "consider the way she handled [plaintiff's] vacation request . . . to be racist."  This line of questioning on cross was relevant to whether Director Madara acted in a discriminatory manner towards plaintiff.  The trial court engaged in a proper exercise of discretion when it permitted cross-examination of plaintiff about her vacation time.

B.

Plaintiff argues that the trial court abused its discretion when it precluded a former employee of RWJUH-Somerset, Claudette Rawlings, from testifying at trial.  We are not persuaded.

Plaintiff supplied answers to defendants' interrogatories in compliance with Rule 4:17-7, but she failed to include Claudette Rawlings as a person with knowledge of the facts who could testify at trial.  Two days before the jury was to be sworn in, plaintiff named Rawlings as a witness.  Defendants moved to bar

Rawlings' testimony, as plaintiff failed to identify her in discovery or at the pretrial conference. The trial court granted defendants' motion.

Plaintiff argues the court should have permitted Rawlings to testify because she would testify to past actions of defendants' racial discrimination. Plaintiff relies on McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) to argue she was "permitted to present indirect and circumstantial evidence that may be relevant to prove discrimination, which could include evidence that the employer has allowed a discriminatory policy against minority employees."

"When faced with a surprise witness, possible sanctions to be explored by the trial court include . . . exclud[ing] the testimony if such an outcome is just and reasonable." Wymbs v. Twp. of Wayne, 163 N.J. 523, 543-44 (2000) (citing Thomas v. Toys "R" Us, Inc., 282 N.J. Super. 569, 581 (App. Div. 1995)).

> Factors that would "'strongly urge' the trial judge, in the exercise of his discretion, to suspend the imposition of sanctions, are (1) the absence of a design to mislead, (2) absence of the element of surprise if the evidence is admitted, and (3) absence of prejudice which would result from the admission of the evidence."
>
> [Id. at 544 (quoting Westphal v. Guarino, 163 N.J. Super. 139, 146 (App. Div.), aff'd o.b., 78 N.J. 308 (1978)).]

Plaintiff's argument that Rawlings' testimony should be permitted because she would testify for a limited or special purpose falls flat. We note that "[t]he

discovery rules 'were designed to eliminate, as far as possible, concealment and surprise in the trial of lawsuits to the end that judgments therein be rested upon the real merits of the causes and not upon the skill and maneuvering of counsel.'" Id. at 543 (quoting Evtush v. Hudson Bus Transp. Co., 7 N.J. 167, 173 (1951)). On this record, we cannot conclude the trial court abused its discretion when it precluded Rawlings from testifying.

C.

Plaintiff argues that the trial court abused its discretion when it barred rebuttal testimony regarding two incidents with Director Madara, one on January 20 and one on July 1. We disagree.

Plaintiff testified to both incidents during trial. "[A]s a general rule the trial court has a wide range of discretion regarding the admissibility of proffered rebuttal evidence." Weiss v. Goldfarb, 295 N.J. Super. 212, 225 (App. Div. 1996), rev'd in part on other grounds, 154 N.J. 468 (1998). "Evidence in rebuttal should not include cumulative evidence or a repetition of that which was put into the record on the main case but is rather that which challenges or contradicts the testimony produced for the defense, which is new matter." Allison v. Bannon, 128 N.J.L. 161, 161 (E. & A. 1942); see also D.G. ex rel. J.G. v. N. Plainfield Bd. of Educ., 400 N.J. Super. 1, 23 (App. Div. 2008).

16

The trial court properly rejected plaintiff's proffer of rebuttal testimony because the subject of the proffer was elicited on direct, and therefore it was repetitive. It follows that the court did not abuse its discretion.

D.

Finally, plaintiff argues that, collectively, the trial judge's errors throughout the trial justify granting a new trial. We are unconvinced. With no errors to aggregate, there can be no "cumulative error" which could have deprived plaintiff of a fair trial. Burney, 255 N.J. at 29.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17

A-0269-23